UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO, LLC d/b/a VIMEO.COM, *et al.*,<br><br>Defendants. | CASE NO. 09 CV 10101 (RA) |
| EMI BLACKWOOD MUSIC, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>VIMEO, LLC d/b/a VIMEO.COM, *et al.*,<br><br>Defendants. | CASE NO. 09 CV 10105 (RA)<br><br><br>**<u>SUPPLEMENTAL DECLARATION OF<br>MICHAEL A. CHEAH</u>** |

I, Michael A. Cheah, declare as follows:

1.      I am Senior Litigation Counsel for IAC/InterActiveCorp ("IAC") and General Counsel of its subsidiary, Vimeo.[1]  I submit this supplemental declaration in further support of Defendants' Motion for Summary Judgment and in opposition to Plaintiffs' Motion for Partial Summary Judgment.  Except as otherwise indicated, I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to them.

**<u>Vimeo's Policy Regarding the Use of Third-Party Copyrighted Content in Videos</u>**

2.      Vimeo's policy regarding the use of commercially-produced music in videos is the same as its policy for any other third-party copyrighted content.  When users inquire about

---

[1]      As set forth in my original declaration, I refer to both the Vimeo, LLC business entity (and predecessors) and the Vimeo service (available through http://vimeo.com) as "Vimeo" unless otherwise noted.

the use of third-party content in their videos, it is Vimeo's policy and practice to respond with a

pre-scripted message stating:

> While we cannot opine specifically on the situation you are referring to, adding a third party's copyrighted content to a video generally (but not always) constitutes copyright infringement under applicable laws.
>
> Under relevant U.S. laws, should a copyright owner come across their copyrighted content on one of our sites, they can submit a takedown notification requesting that we remove the content.  This same area of law affords the operator of the site some level of protection from claims of copyright infringement, when dealing with user-generated-content.  The same protection does not apply to the actual poster of the content.
>
> Again, we cannot provide any legal advice on this subject, so if you are genuinely concerned, we suggest you contact an attorney.

Attached hereto as **Exhibit 1** are true and correct copies of sample email correspondence

between Vimeo employees and users relating to this issue.

3.      In addition, Vimeo has, over the years (including before Plaintiffs filed their

Complaints), posted answers to user questions about the use of music in videos.  For example,

the following are links to forum posts by Vimeo staff members responding to user questions

regarding the use of music in videos:

- https://vimeo.com/forums/help/topic:16154      • https://vimeo.com/forums/topic:44788

- https://vimeo.com/forums/topic:16790      • https://vimeo.com/forums/help/topic:65904

- http://vimeo.com/forums/topic:17371      • https://vimeo.com/forums/help/topic:66948

- http://vimeo.com/forums/topic:17423      •https://vimeo.com/forums/help/topic:74821

Attached hereto as **Exhibit 2** are true and correct copies of these posts as they appeared on

Vimeo on November 16, 2012.

4.      To the extent Vimeo employees had isolated communications with users

concerning the use of third-party copyrighted content in videos that deviated from the policy

towards third party copyrighted content set forth in its Terms of Service, those communications were few in number, unauthorized, and do not reflect (and have never reflected) Vimeo's policy pertaining to the use of third-party copyrighted content in videos.

**Vimeo's Policy and Procedures for DMCA Compliance**

5.      Vimeo complies with the DMCA by removing expeditiously any infringing content when it (a) receives a substantially compliant DMCA notice; or (b) becomes aware of content that, on its face, is obviously infringing.   This policy applies to all third-party copyrighted content, including but not limited to videos containing commercially produced music.  In the latter case, when a video appears infringing on its face, Vimeo does not wait for a DMCA notice from the content owner, but rather removes the video of its own accord.  Attached hereto as **Exhibit 3** are true and correct copies of documents reflecting instances in which Vimeo did just that.

6.      As noted in my prior declaration, Vimeo uses a "three strikes" policy to identify repeat infringers and will terminate the accounts of users who have been the subject of three separate, valid DMCA takedown notices.  Vimeo reviews users who have received multiple DMCA notices manually to determine the number of strikes and whether an account should terminated even if there are fewer than three strikes.  Vimeo treats DMCA notices received within a short period of time as a single "strike" because it gives users an opportunity to learn of their mistake and correct their behavior.  Based upon documents I have reviewed, the vast majority of DMCA takedown notices received by Vimeo implicate users who have never been subject to a prior notice.

7.      No officers or employees of Vimeo have received three strikes.

8.      Vimeo has implemented a policy of terminating the accounts of repeat infringers pursuant to the DMCA since its inception.  Attached hereto as **Exhibit 4** are true and correct copies of communications representing examples in which Vimeo terminated a user's account pursuant to its repeat-infringer policy prior to November 2008.

9.      In November 2008, Vimeo's "Purgatory" system was implemented to facilitate repeat-infringer tracking as the volume of DMCA notices received by Vimeo had increased. Between November 2008 and December 2009 (when Plaintiffs filed their Complaints), Vimeo terminated at least 89 user accounts pursuant to its repeat-infringer policy.  Attached hereto as **Exhibit 5** is a true and correct copy of a spreadsheet listing these account terminations.

10.     Vimeo has terminated the accounts associated with the following user ID numbers: 278039; 431377; 538358; 552652; 1457856, and 158837, among others.

11.     Vimeo has always informed users that their accounts could be terminated by Vimeo for violating Vimeo's Terms of Service.  Although the precise language used in Vimeo's Terms of Service has been modified over the years, the message to users has always been consistent:  Vimeo reserves the right to remove videos and user accounts that violate its Terms of Service.  Attached hereto as **Exhibit 6** is a true and correct copy of the Vimeo's Terms of Service as it appeared on Vimeo when it was acquired by IAC in or about August 2006. Attached hereto as **Exhibit 7** is a true and correct copy of Vimeo's Terms of Service as it appeared on Vimeo at least as early as May 5, 2008.  Attached hereto as **Exhibit 8** is a true and correct copy of Vimeo's Terms of Service as it appeared in December 2008, when Plaintiffs sent Vimeo their first "cease and desist" letter.  Attached hereto as **Exhibit 9** is a true and correct copy of Vimeo's Terms of Service on December 10, 2009, the day Plaintiffs filed their

4

Complaints.  Attached hereto as **Exhibit 10** is a true and correct copy of Vimeo's Terms of Service as it appears on Vimeo today.

12.     Vimeo blocks users from uploading the exact same video file of a video previously removed in response to a DMCA takedown notice.  If Vimeo becomes aware that a user circumvents this blocking mechanism by re-uploading a different video file of the same video that was subject to a prior DMCA takedown notice, Vimeo staff will terminate that user's account.

**Vimeo Expeditiously Removed the Videos-In-Suit**

13.     As explained in my original declaration, Vimeo removed the videos available at every one the URLs referenced on the schedules to the Complaints within two weeks of being served.

14.     Maria ("Karen") Hadassah Abad was a Community Assistant in mid-to-late 2009.  One of the videos listed in Schedule A of EMI's Complaint, located at http://www.vimeo.com/3212317 and posted by Ms. Abad, was removed from the Vimeo site by Vimeo on or about December 31, 2009, shortly after her temporary employment with Vimeo terminated.  Due to an inadvertent administrative oversight, Ms. Abad's individual Vimeo account retained certain Moderator access privileges, despite her termination.  Ms. Abad, without informing Vimeo or asking for Vimeo's permission, subsequently used that Moderator access to restore the video located at http://www.vimeo.com/3212317 to Vimeo.  On or about June 23, 2012, upon learning that the video had been improperly restored by Ms. Abad, Vimeo disabled Ms. Abad's Moderator status and permanently removed the video she had restored.

15.     Approximately four months ago, on or about July 16, 2012, Vimeo's developers were making modifications to the code base of the site.  Unbeknownst to Vimeo, these changes inadvertently introduced an error into the code, which caused certain videos in the Purgatory database to appear as though they were available on the site.  Specifically, if a video was in the Purgatory database and had previously been associated with a "group" on Vimeo, it temporarily became available for download from the site if a user typed the precise group URL for the video directly into his or her browser.  The clip page would not, however, show up if a user merely browsed the group that the video formerly appeared in, and we are not aware of any other way that these videos could be located on Vimeo by a user.

16.     The videos implicated by the above-referenced engineering glitch were only available for download.  None of these videos could be streamed on Vimeo.  If a user attempted to "play" any of these videos, he or she would receive the following message:  "Sorry. This video does not exist."

17.     Vimeo first became aware that twelve of these videos which purportedly included certain of Plaintiffs' works were available for download only after reading Plaintiffs' motion papers, which were served on Friday, October 12, 2012.

18.     By Wednesday, October 17, 2012, Vimeo had identified the problem and corrected it.  This correction disabled access to those twelve videos.

19.     In the approximately three months since this error was introduced, the twelve videos were downloaded a combined total of 59 times.  Of the 59 downloads, 53 were associated with a single IP address in or near Los Angeles County, California.  The other six downloads were associated with one of three different IP addresses, all located in or near Los Angeles County, California.  All 59 downloads occurred on six different days between September 15,

2012 and October 10, 2012, which is after Vimeo served its opening summary judgment papers and before the due date of Plaintiffs' response.  Based on these facts, it is likely that all four of these IP addresses are associated with Plaintiffs, its counsel, and/or its experts.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

DATED:   November 16, 2012
         New York, New York

_____
Michael A. Cheah

7