UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*, | CASE NO. 09 CV 10101 (RA) |
| Plaintiffs, | |
| v. | |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| EMI BLACKWOOD MUSIC, INC., *et al.*, | CASE NO. 09 CV 10105 (RA) |
| Plaintiffs, | **VIMEO'S REPLY TO PLAINTIFFS' RESPONSE TO VIMEO'S POST-REMAND SUPPLEMENTAL STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF VIMEO'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |

Pursuant to this Court's Order dated September 10, 2018 [Dkt. 210],[1] Defendants Vimeo, Inc. and Connected Ventures, LLC (collectively, "Vimeo") hereby submit this reply to Plaintiffs' Response to Vimeo's Post-Remand Supplemental Statement of Undisputed Facts as to which there is no genuine issue to be tried in connection with Vimeo's Post-Remand Motion for Summary Judgment Pursuant to the DMCA Safe Harbor, and in opposition to Plaintiffs' Motion for Partial Summary Judgment ("Vimeo's 2d SSUF") [Dkt 202].

---

[1]  The September 10, 2018 Order (at 2) allows Vimeo "to submit *either* a reply in further support of their own Rule 56.1 statement *or* a sur-reply to Plaintiffs' reply." Vimeo has opted for the former. As to Plaintiffs' reply in further support of their Rule 56.1 Statement, Vimeo respectfully requests that the Court look to each of Vimeo's responses and the cited evidence accompanying each response to evaluate how each statement is disputed, rather than rely on Plaintiffs' inaccurate characterizations of Vimeo's responses or Plaintiffs' attempts to supplement or modify their original statements.

**Facts Not Disputed by Plaintiffs**

Attached hereto as **Exhibit A** is a chart that lists the statements of facts that Plaintiffs agree are not disputed for the purpose of the parties' post-remand summary judgment motions.[2]

**Facts Purportedly Disputed by Plaintiffs**

As the Court previously noted, "from Vimeo's perspective less needs to be said and not more." Dkt. 169 at 5:21-22 (May 11, 2017). However, Plaintiffs' response to Vimeo's 2d SSUF—in which they purport to dispute all but eight of Vimeo's undisputed facts—underscores Plaintiffs' scorched-earth approach to these actions. Examination reveals that each of Plaintiffs' responses is deficient in multiple respects, and thus fails to demonstrate that the asserted fact is disputed.

Attached hereto as **Exhibit B** is a chart that sets forth for each material fact in Vimeo's 2d SSUF that Plaintiffs purport to dispute: (1) the asserted undisputed material fact; (2) Plaintiffs' response; and (3) Vimeo's reply, explaining why Plaintiffs' response does not actually raise a material dispute.

In this submission, Vimeo does not address every deficiency in Plaintiffs' responses, as Vimeo's statements and accompanying citations to evidence remain facially uncontroverted notwithstanding Plaintiffs' attempts to manufacture disputes where none exist. However, certain glaring deficiencies and misleading representations that span a wide range of Plaintiffs' responses and warrant particular attention and correction. For the convenience of the Court, Vimeo identifies those global deficiencies below and incorporates them by reference in its detailed reply in Exhibit B.

---

[2]    Vimeo acknowledges that, in conceding that these facts are undisputed, Plaintiffs also raise certain objections or present additional information to challenge the materiality or relevance of these asserted facts. Exhibit A does not include those objections or statements.

## A.    <u>Plaintiffs' Failure to Dispute the Asserted Fact as Written</u>

Plaintiffs' responses do not dispute the facts as asserted by Vimeo, but instead interject unrelated responses and citations that do nothing to controvert the specific asserted fact, as written by Vimeo, and thus cannot create a genuine dispute.  As just one example, Vimeo's ¶ 59 states: "Whitelisting has no effect on users' ability to search for or access a whitelisted video."   Plaintiffs say this fact is "disputed," but respond that "[a] whitelisted video can no longer be flagged by users," remains accessible on Vimeo.  This and Plaintiffs' other failures to controvert the fact actually asserted, and as it is written, are to be disregarded.  *See, e.g.*, *Baity v. Kralik*, 51 F. Supp. 3d 414, 418-21 (S.D.N.Y. 2014) (criticizing responses that "speak[] past Defendants' asserted facts without specifically controverting those same facts," and thus disregarding "purported 'denials' … that do not actually deny or refute the specific facts asserted by Defendants"); *id.* (same as to denials that "quibble with Defendants' phraseology, but do not address the factual substance asserted"); *Emanuel v. Griffin*, 2015 WL 1379007, at *1 (S.D.N.Y. Mar. 25, 2015) (disregarding denials that "recite[] facts that are irrelevant to the paragraph ... to which they ostensibly correspond").

## B.    <u>Plaintiffs' Improper Reliance on Speculation, Conjecture, Conclusory Assertions and Legal Argument</u>

It is black-letter law that "'conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment.'"   *Rodriguez v. City of N.Y.*, 2013 WL 3584834, at *3 (S.D.N.Y. July 15, 2013) (Abrams, J.) (quoting *Kulak v. City of N.Y.*, 88 F.3d 63, 71 (2d Cir. 1996)); *see also, e.g.*, *Echeverri v. Orange Reg'l Med. Ctr.*, 2014 WL 12539664, at *1 (S.D.N.Y. Oct. 14, 2014) (non-movant "must do more than simply show there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation") (quotations and citations omitted).  Many of Plaintiffs' responses, however, rely on nothing more than speculation to conjure up a dispute.  For example, Plaintiffs' speculation that

Vimeo's legal counsel might have interacted with Videos-in-Suit because "other employees" had interacted with Videos (*see* ¶ 4) is pure conjecture that cannot raise a factual dispute.

Likewise, Plaintiffs' responses that merely contain legal argument rather than citation to evidence cannot give rise to a dispute about an asserted fact. *See Emanuel*, 2015 WL 1379007, at *1 (disregarding response that presents "inappropriate legal argument"); *Baity*, 51 F. Supp. 3d at 421, 450 (disregarding responses that present "improper legal arguments").

## C.   <u>Plaintiffs' Responses That Are Immaterial Under The Second Circuit's Remand</u>

Finally, Plaintiffs' responses depend on evidence that is largely immaterial to the issues before the Court, particularly in light of the Second Circuit's decision in this case. *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78 (2d Cir. 2016). For example, the Second Circuit held that:

- "[T]he burden falls on [Plaintiffs] " to prove red flag knowledge. *Id.* at 95.

- To prove red flag knowledge, Plaintiffs must establish that Vimeo "must have actually known facts that would make the specific infringement claimed objectively obvious to a reasonable person," that is, "an ordinary person[] not endowed with specialized knowledge or expertise concerning music or the laws of copyright." *Id.* at 93-94.

- A "mere showing that a video posted by a user on [Vimeo] includes substantially all of a recording of recognizable copyrighted music, and that an employee … saw at least some part of the user's material,"—*e.g.*, "when employees 'liked' or commented on videos, placed the videos on 'channels,' or 'buried' them"—"is insufficient to sustain [Plaintiffs'] burden of proving that [Vimeo] had either actual or red flag knowledge of the infringement." *Id.* at 96 & n.12.

- Plaintiffs must "point to evidence … that Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious to an ordinary person who had no specialized knowledge of music or the laws of copyright." *Id.* at 98.

- "[T]he mere fact that a video contains all or substantially all of a piece of recognizable, or even famous, copyrighted music and was to some extent viewed (or even viewed in its entirety) by some employee … would be insufficient (without more) to sustain the copyright owner's burden of showing red flag knowledge." *Id.* at 97.

- "[E]vidence [that] was not shown to relate to any of the videos at issue in this suit, … is insufficient to justify a finding of red flag knowledge, under the principle of *Viacom*, as to those specific videos." *Id.* at 99; *see also id.* ("[B]ecause evidence of willful blindness is a proxy for knowledge, … it too must relate to specific infringements.").

4

Plaintiffs' responses, however, repeatedly cite to and rely on evidence that the Second Circuit found to be immaterial or insufficient to give rise to a disputed factual issue with regard to the particularized red-flag inquiry required as to each of the Videos-in-Suit.

Dated: September 20, 2018
       New York, New York

                                    Respectfully submitted,

                                    /s/  Robert L. Raskopf
                                    Robert L. Raskopf
                                    Todd Anten
                                    Jessica A. Rose
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                    51 Madison Avenue, 22nd Floor
                                    New York, NY 10010
                                    (212) 849-7000

                                    Rachel Herrick Kassabian (*pro hac vice*)
                                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                    555 Twin Dolphin Drive, 5th Floor
                                    Redwood Shores, CA 94065
                                    (650) 801-5000

                                              - and -

                                    Michael A. Cheah
                                    VIMEO, INC.
                                    555 West 18th Street
                                    New York, New York 10011
                                    (212) 314-7457

                                    *Attorneys for Defendants Vimeo, Inc. and*
                                    *Connected Ventures, LLC*

# Exhibit A

**Exhibit A**

### Vimeo's Post-Remand Supplemental Statement of Undisputed Facts:
### Statements Not Disputed by Plaintiffs

The numbered paragraphs below correspond to Vimeo's Post-Remand Supplemental Statement of Undisputed Facts, dated August 16, 2017 [Dkt. 198].

## The Post-Remand Videos at Issue

**1.**    Each of the 307 videos at issue (the "Videos-in-Suit" or "Videos") that Plaintiffs allege infringes their copyrights in certain identified musical compositions or sound recordings (the "Works") incorporates both a visual component and an audio component. Supplemental Declaration of Russell J. Frackman ("Frackman Supp. Decl."), Ex. A (asserted works and video URLs), Ex. B (videos).

## Vimeo Employees Could Not Discern Objectively Obvious Infringement of the Works in the Videos-in-Suit

**14.**    Another one of the videos subject to a counter-notification after Vimeo's removal of videos identified by Plaintiffs' proposed amended schedules was located at http://www.vimeo.com/14953336, based on its incorporation of the musical composition "F\*\*K You," performed by Cee Lo Green. Plaintiffs were provided notice of this counter-notification. Plaintiffs did not notify Vimeo that it had filed a lawsuit within 10 business days of receipt of the counter-notification, and as a result the video was restored to the site. Cheah Decl. ¶¶ 29, 51 & Ex. 12; Vimeo's SUF ¶ 51 (undisputed for the purposes of the motion).

**15.**    The video at http://www.vimeo.com/14953336 that was restored pursuant to the counter-notification is titled "Cee Lo Green – F\*\*k You." At least one Vimeo employee had commented on the video, and at least eight Vimeo employees had "liked" the video before it had been removed. The video incorporates the same musical composition as the one Plaintiffs now assert is infringing in Video No. 306. Anten Supp. Decl., ¶ 4 & Ex. 3; Frackman Supp. Decl., Ex. A (Video No. 306), Ex. B (No. 306).

## Plaintiffs' Asserted Indicators of Vimeo's Red Flag Knowledge

**A.**    **"Music Credits"**

**30.**    For several Videos-in-Suit, the Vimeo webpage does not list any identification of music used in the Video.[FN5]  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart) (column A); Berkley 2d Supp. Decl., Ex. B (column K).

> [FN5] *See* Video Nos. 103, 163, 196, 202, 211, 226, 247.

Exhibit A

**B.    "Liking" & Commenting**

**39.**    The comment made by Jonathan Marcus on the page for Video No. 86 was made after his employment at Vimeo ended.  Declaration of Russell J. Frackman [Dkt. 95-3] ("Frackman Decl."), Ex. 12 (Depo. Ex. 371 at EMI 01054) (video uploaded November 1, 2008); Plaintiffs' Response to Vimeo's 1st SSUF ¶ 56(c) (undisputed that Mr. Marcus's employment at Vimeo ended December 8, 2007).

**C.    Flagging**

**47.**    Vimeo also enables its users to "flag" videos that they believe violate Vimeo's Terms of Service.  When users flag videos they are given the option to provide the reason they believe the video is inappropriate by selecting from various pre-set options, including "[u]ser did not make this: The person who uploaded this video obviously didn't make it (it's a TV show, movie trailer, or ripped from elsewhere the web)."  The flagging interface also explains how to submit a DMCA claim.  The video is then queued for review by a Community Moderator in the "Flagged" Mod Tool. That Community Moderator evaluates the clip in question and determines whether or not to remove the video. Vimeo's SUF ¶ 29 (undisputed for the purposes of this motion).

**D.    Whitelisting**

**61.**    There is no evidence that a video that is whitelisted cannot be deleted by the uploader or by Vimeo.  Supp. Pile Decl., ¶ 8.

**63.**    The videos located at the URLs http://vimeo.com/9927953 and http://vimeo.com/9902799 are not listed in Plaintiffs' schedules, and Plaintiffs have not asserted copyright ownership over the sound recordings or musical compositions from in these actions.  The two videos reflect that they were posted by "Arkansas Youth Conference," and titled "AYC Missionary Video" and "AYC Promo 1," respectively. Frackman Supp. Decl. Ex. R; 09-cv-10101, Dkt. 141-1 & 141-2; 09-cv-10105, Dkt.139-1; Anten Supp. Decl. ¶ 7 & Ex. 6; Verdugo Depo. Ex. 232:23-233:21.

# Exhibit B

**Exhibit B**

**Vimeo's Post-Remand Supplemental Statement of Undisputed Facts:**
**<u>Vimeo's Reply to Facts Purportedly Disputed by Plaintiffs</u>**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| **I.  The Post-Remand Videos at Issue** | | |
| **2.**  Plaintiffs' claims of infringement are limited only to the audio component of each Video-in-Suit.  Plaintiffs' claims of infringement are not for any of the visual components of any of the Videos-in-Suit, nor for any audio components other than the use of the Works.  Frackman Supp. Decl., Exs. A & B; Post-Remand Second Supplemental Declaration of James D. Berkley ("Berkley 2d Supp. Decl."), Ex. B (hereinafter Plaintiffs' "Summary Chart"). | *Disputed.  The cited evidence does not support that Plaintiffs' claims are "limited only to the audio component" of each of the 307 Videos currently at issue, or that they do not pertain also to the visual components or other audio components besides the sound recordings and musical compositions identified in the cited exhibits.  The infringements identified in these exhibits (the 307 Videos) include adaptation of the identified Works through their incorporation into unauthorized derivative works that combine them with visual components and, in instances, other audio components.  See, e.g., Record Companies' Amended Complaint (Dkt. 141) at ¶¶38-39, 46-47, 55; Publishers' Amended Complaint (Case No. 09-cv-10105, Dkt. 139) at ¶¶ 36, 43-44, 51-52, 60.* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. |
| **3.**  For Video Nos. 111, 186 and 239, each was uploaded by the user to Vimeo with a visual component accompanying the audio component.  Plaintiffs' copies of those Videos submitted to the Court do not include that visual component.  Frackman Supp. Decl. ¶ 5, Ex. B. | *Disputed. The evidence cited does not include copies of Videos 111, 186, and 239. When Plaintiffs requested copies of those videos from Vimeo, Vimeo informed Plaintiffs it did not have them. The evidence submitted by Plaintiffs also includes screenshots of the "visual component" of these videos. See Video Exs. 111, 186, 239 (in Frackman Suppl. Decl., Ex. C).* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. |
| **II.  Vimeo Employees Could Not Discern Objectively Obvious Infringement of the Works in the Videos-in-Suit** | | |
| **4.**  There is no evidence that any of the Vimeo employees who Plaintiffs claim interacted with any of the Videos-in-Suit held the position or title of legal counsel at Vimeo at the relevant times or were responsible for providing legal advice to Vimeo. | *Disputed.  Defendants do not dispute that Vimeo found [sic] Jacob Lodwick, who posted at least one of the 307 Videos and interacted with others, advised that Vimeo change its policy to "no longer allow people to post videos that they were closely involved in" and change its upload page to say "You can only upload a video if you are the copyright holder." Plaintiffs' SUF ¶ 152 (not disputed.<sup>FN4</sup>); Summary Chart (e.g. at Video Nos. 3, 8, 11, 17, 31, 33, 37, 42). There also is colorable evidence supporting that Vimeo's legal counsel including Michael Cheah or others interacted with the Videos in question. See e.g., Plaintiffs' Supplemental Statement of Undisputed and/or Genuinely Disputed Facts dated July 17, 2017 ("SSUF") ¶ 3 (not disputed that other employees watch and otherwise interact with videos); SSUF ¶ 39 (not disputed that on or about February 2009, a meeting was held with* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence supporting that Mr. Lodwick "held the position or title of legal counsel at Vimeo" or was "responsible for providing legal advice to Vimeo."<br><br>• Plaintiffs cite no evidence (other than speculation) that Mr. Cheah ever |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *Vimeo staff instructing them "to cease using unlicensed copyrighted music in videos they uploaded to the Vimeo Website") (although videos on Plaintiffs' Schedules were not removed). See, e.g., Video Exhibits 4, 7, 12, 14, 35, 37 (Frackman Suppl. Decl. Ex. C).*<br><br>        *FN4 Where Plaintiffs refer to facts as "undisputed" or "not disputed" by Vimeo, they acknowledge that certain facts are not disputed "for the purposes of this motion," or are accompanied by various objections. Plaintiffs do not here indicate all instances where Vimeo does not dispute Plaintiffs' cited statements. See, e.g., Vimeo Response to Plaintiffs' Post-Remand Supplemental Statement of Undisputed and/or Genuinely Disputed Facts (submitted August 16, 2017) and Plaintiffs' reply thereto (submitted concurrently with this response).* | interacted with a Video-in-Suit. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **5.**   There is no evidence that any of the Vimeo employees who Plaintiffs claim interacted with any of the Videos-in-Suit had, at the relevant times, a license to practice law, a law degree, a legal education, or any other formal legal training. | *Disputed. See response to ¶ 4, supra, which is incorporated by reference. Additionally, Vimeo employees received legal education and training when the meeting was held with them in or about February 2009 instructing them to "cease using unlicensed copyrighted music in videos they uploaded to the Vimeo Website." SSUF ¶ 39 (not disputed by Vimeo).* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• One meeting that instructs staff to cease using unlicensed music in their own videos cannot reasonably be considered "legal education" or "formal legal training."<br><br>• *See also supra*, Vimeo's reply to ¶ 4. |
| **6.**   Vimeo employees testified that they did not have expertise or specialized knowledge in the fields of music licensing or the laws of copyright. For example: | *Disputed. The testimony cited in sub-parts 6(a)-(h) below does not support the stated proposition, either with respect to "Vimeo employees" generally or with respect to the specifically named individuals. It further is ambiguous as to what would constitute "not hav[ing] expertise or specialized knowledge." See responses to ¶¶ 6(a)-6(h), infra, which are incorporated by reference.* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of the testimony presented. *See supra* Part A.  *See infra* ¶¶ 6(a)-(h), incorporated by reference. |
| **6(a).**   Andrea Allen: Allen Depo. 236:2-16 (asked "As a moderator at Vimeo, did you have a question in your mind as to whether it was permissible to use copyrighted music without a license?" she responded "Yes, because it isn't clear to me when you have to or when you don't | *Disputed. Ms. Allen testified to the existence of a policy at Vimeo not to remove any video containing copyrighted music unless Vimeo received a DMCA notice. Allen Depo. at 236:17-24 (Anten Suppl. Decl. Ex. 7). This is a form of specialized knowledge.* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Ms. Allen's testimony. *See supra* Part A.  The evidence cited by Plaintiffs in response does not demonstrate such expertise or |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| have to." Then asked "Did you ever ask anybody to explain to you when you have to and when you don't have to?" she responded: "Nobody at Vimeo, I don't think, is … knows the law enough to be able to explain it to me that well unless it's like a lawyer."); 268:4-6 (does not know the difference between a recording and a musical composition); 199:7-199:23 (does not understand fair use or parody in copyright law). [*footnote omitted*] | | specialized knowledge, and Plaintiffs' representation to the contrary is conclusory. *See supra* Part B. |
| **6(b).** Zachary Klein: Klein Depo. 26:8-9 ("I do not know that it's wrong to use music in the background of personal video."); 36:8-22 ("it's unclear to me who owns what and how it may be used"); 36:23-38:6 (does not understand that it is improper to use music in a personal video and has "zero expertise" on it); 38:7- 39:17 ("not clear to me" what exactly he can do with a CD he owned); 41:3-43:3 (does not know the rules about using music in a video because he does not know the law); 45:20-46:8 ("I truly do not understand what it means for music to be copyrighted"); 58:4-16 (does not understand copyrights pertaining to photographs); 164:11-20 (never participated in discussion concerning use of copyrighted music in a personal video or royalties for use of copyrighted material). | *Disputed. Mr. Klein had sufficient specialized knowledge of music copyrights to write: "I, for one, am willing to boycott Capitol artists unless they reconsider and I implore other labels to work with Vimeo to determine a simple process to make copyrighted music available for personal video." Klein Depo. at 36:23-37:6 (Anten Suppl. Decl. Ex. 8), 44:12-18 (Frackman Decl. Ex. 2, Dkt. 88-3).* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Klein's testimony. *See supra* Part A. The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge, and Plaintiffs' representation to the contrary is conclusory. *See supra* Part B. |
| **6(c).** Moshe Koyfman: Koyfman Depo. 52:24-53:6 (never took an intellectual property course); 102:14-103:3 (does not know what "commercial" music is or "exactly the definition of synchronized"); 126:9-127:4 (knowing "at the highest | *Disputed. See Koyfman Depo. (Frackman Decl. Ex, 8, Dkt. 89-5) at 141:21-142:5 & Ex. 348; 143:10-144:8; 145:22-147:2; 149:17-150:25; 202:14-203:10; Plaintiffs' SSUF at ¶ 145.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Koyfman's testimony. *See supra* Part A. The evidence cited by Plaintiffs in response does not |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| form" that music, video and written content "can be copyrighted … [but] I don't know beyond that. I'm not an attorney."); 127:18-128:5 (used "copyrighted content" to refer to "TV clips appearing on YouTube"); 129:4-130:3 (did not learn about copyright in school); 139:17-140:15 (did not understand what music licenses entailed, testifying "I have no idea. I'm not an attorney."); 158:23-159:16 ("I haven't seen a lot of licenses. … It's not my thing. Attorneys do that."); 206:25:-207:18 (has "not dug into the intricacies of how music rights work too deep"). | | demonstrate such expertise or specialized knowledge. |
| **6(d).**   Jakob Lodwick: Lodwick Depo. 58:15-59:23 (does not understand copyright or fair use); 67:4-21 ("not sure what qualifies as legal" permission to use music in video); 83:3-12 ("I was unaware of there being any problems with using music— synching music in this context"); 85:17-86:19 (has only a "loose understanding" of what "copyrighted" means for music associated with a video, but "I'm not an expert in such matters"), 89:13-22 (does not know what the owner of a sound recording owns). | *Disputed. See Lodwick Depo., (Frackman Decl. Ex. 1, Dkt. 88-1) 67:22-68:14; Plaintiffs' SSUF at ¶ 145* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Lodwick's testimony. *See supra* Part A.  The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge. |
| **6(e).**   Jonathan Marcus: Marcus Depo. at 126:22-129:12 (believed he had right to use his own copy of a song in video "[b]ecause I owned the song"); 132:2-135:18 (similar); 170:21-171:3 (not part of his job responsibilities to understand copyright issues); 177:12-15 (used word "copyright" to mean a video "was personal in nature"); 177:16-178:25 (did not | *Disputed. See Marcus Depo. (Frackman Decl. Ex. 9, Dkt. 89-6) at 121:24-122:8; 234:17-236:8; Plaintiffs' SSUF at ¶ 145; ¶ 149 (not disputed that on the page of an infringing lip dub, Vimeo executive Jonathan Marcus responded to a user comment by stating that Vimeo was "definitely thinking about" providing links to buy the music used in lip dub videos at outlets such as iTunes or Amazon.).* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Marcus's testimony. *See supra* Part A.  The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge. |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| understand copyright protection); 215:13-15 (has no experience with music licensing in any capacity); 230:6-15 (when asked about music copyright licenses, testified "the whole issue is so morphic that I didn't have any clear indication of what the fee may be or what it may be for"). | | |
| **6(f).** Dae Mellencamp: Mellencamp Depo. at 27:9-13 (at prior job, did not "learn anything about rights holders with respect to music, sound recording and/or compositions"); 31:25-32:6 (other than a single transaction, had no experience involving "licensing of music content"). | *Disputed. See Mellencamp Depo. (Frackman Decl. Ex. 12, Ex. 10, Dkt. 89-7) at 25:9-26:25; 255:10-257:22; 276:2-14; Plaintiffs' SSUF at ¶ 145.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Ms. Mellencamp's testimony. *See supra* Part A. The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge. |
| **6(g).** Dalas Verdugo: Verdugo Depo. 23:19-25:14 (has never registered a copyright, has not read about or taken courses about copyright, has never read the DMCA, and has never worked for a record company or music publishing company). | *Disputed. Mr. Verdugo was comfortable referring to "copyrighted music" both when corresponding with users and in his deposition testimony. See, e.g., Plaintiffs' SSUF 163 ("We allow [using copyrighted music], however if the copyright holder sent us a legal takedown notice, we would have to comply."); Verdugo Depo. (Frackman Decl. Ex. 5, Dkt. 89-1) at 80:17-81:11 ("It's on a case-by-case basis so, for example, if we receive the DMCA notification on copyrighted music, we would remove it. [...] On an occasion where it was strictly just the copyrighted music with a still image and no real active creation by the video creator, we would remove it if we encountered it. [...] I can't recall any other occasions off the top of my head.").* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Verdugo's testimony. *See supra* Part A. The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge, and Plaintiffs' representation to the contrary is conclusory. *See supra* Part B. |
| **6(h).** Blake Whitman: Whitman Depo. 116:25-117:10 (does not "necessarily know what constitutes copyright"); 130:14-18 (does "not really" know the difference between "a recording and a musical composition"); 241:15-242:14 (never took any courses in copyright, read the copyright statute, read books about copyright law, or had a job dealing with copyrights). | *Disputed. Mr. Whitman was comfortable referring to copyrighted music both when corresponding with users by e-mail and in Vimeo's public forums, and posted to Vimeo's official blog about the difficulty of finding music that could be used in videos. See Plaintiffs' SSUF ¶ 158 (responding to user question that Vimeo policy toward copyrighted music was "Don't ask, don't tell"); SSUF ¶ 159 (responding to user "We can't officially tell you that using copyright music is OK. But..."); SSUF ¶ 164 (replying to question in Vimeo public forums about "legality" of using copyrighted music, "Technically no, but I'm sure the FBI won't be breaking down your door anytime soon") (emphasis* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including the accuracy of Mr. Whitman's testimony. *See supra* Part A. The evidence cited by Plaintiffs in response does not demonstrate such expertise or specialized knowledge, and Plaintiffs' representation to the contrary is conclusory. *See supra* Part B. |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *added); SSUF ¶ 152 (stating in Vimeo blog that "finding music for your videos can be somewhat... well, painful.").* | |
| **7.** It is difficult to determine whether the use of music in a video would be considered a de minimis or fair use such that it would not require permission of the rights holders in order to be lawfully uploaded to Vimeo.  For example, the Recording Industry of America, Inc. previously withdrew three DMCA takedown requests sent to Vimeo in April 2006. Declaration of Michael A. Cheah [Dkt. 55] ("Cheah Decl."), ¶ 45 & Ex. 8; Verdugo Depo. 76:15-21 (use of music in videos on Vimeo might be fair); Whitman Depo. 110:7-23 (similar); *Capitol Records, LLC v. Vimeo*, LLC ("*Vimeo III*"), 826 F.3d 78, 96-97 (2d Cir. 2016) (employees cannot be expected to distinguish between infringement and fair use). | *Disputed. The materials cited do not support that such a determination is "difficult," much less with respect to the 307 Videos at issue, and Vimeo's own documents support that it is not difficult. The paragraph cited paragraph from Mr. Cheah's declaration, which asserts the statement made almost verbatim, lacks foundation and is inadmissible, including because Mr. Cheah's self-serving testimony cannot (and does not) speak on behalf all Vimeo employees or address all circumstances, including the specific Videos at issue. Moreover, the statement presents not a "fact" but a mixed question of law and fact, and omits that the Second Circuit actually addressed distinguishing infringements from "parodies that may qualify as fair use." 826 F. 3d at 97 (emphasis added). The referenced requests from 2006 also do not support Defendants' assertion, including because there is nothing in them showing any relation to issues of de minimis or fair use, and because Vimeo has expressly recognized that videos such as the 307 at issue are not fair use. See Plaintiffs' SSUF ¶ 168 (posting on Vimeo page explaining as not fair use "rips of movies, television shows, and music videos — or the unauthorized use of a popular song in the background of your video."); SSUF ¶ 164 (Blake Whitman responding "Technically no" to user question about "legality" of using copyrighted music in videos).* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs do not dispute that a service provider's employees "cannot be expected to know how to distinguish" infringements from fair uses.  *Vimeo III*, 826 F.3d at 96-97; *see also* Cheah Decl., Ex. 8 (RIAA withdrawing notices after Vimeo asked about "using copyrighted music in the background, but with non-copyrighted video playing").  This is a factual statement.<br><br>• Mr. Cheah's testimony is based on his personal knowledge, including his oversight and implementation of Vimeo's past and present copyright policies and compliance.  Cheah Decl., ¶ 1.<br><br>• Evidence that a video contains music cannot give rise to an inference that the user needed permission to use music in that video.  *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97. |
| **8.** Information beyond knowing that a video contains all or nearly all of a musical composition or sound recording is necessary to determine whether the use of that work is obviously infringing.  Thus, Vimeo employees could not determine only by visiting a Vimeo page and watching a video whether the uploader did or did not have permission, or needed | *Disputed. The statement is not supported by the materials cited, including the conclusory and inadmissible assertions of the Cheah Declaration and Vimeo Response Chart, and relies on a leap of logic between its first sentence and second sentences to argue for an unsupported legal conclusion. The first sentence reframes the legal holding of the Second Circuit with respect to an isolated fact, while the second purports the same must apply to specific Vimeo employees "visiting a Vimeo page and watching a video" in the context of specific facts and circumstances. Such facts and circumstances already include* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Evidence that a video contains music—which is the entirety of Plaintiffs' cited evidence in response—cannot give rise to an |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| permission, to use music in that video. Cheah Decl. ¶¶ 44-45; Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Frackman Supp. Decl., Exs. A & B; *Vimeo III*, 826 F.3d at 96-97 (employees cannot be expected to know whether use of copyrighted music was authorized or a fair use). | *"information beyond knowing that a video contains all or nearly all of a musical composition or sound recording," as is amply demonstrated by Plaintiffs' evidence. See, e.g., SSUF ¶ 61 (not disputed by Vimeo that for 300 of the Videos at issue, the names of artists and/or song titles are referenced either in the title, description, or tags of the videos, in the videos themselves, or occasionally in posted comments, including more than 80 with credits in the format "music: [name of artist and/or recording]."); SSUF ¶ 67 (not disputed that Vimeo's co-founder Jacob Lodwick suggested to Vimeo users that videos containing music be tagged with the format: "music:The Beatles or music:Beck or whatever," and that Vimeo employees used the convention "music:" in their own videos); SSUF ¶ 69 (not disputed that none of the Videos identified in Plaintiffs initial Complaints reflect on their face the existence of any authorization or license by the copyright owner); see also SSUF ¶ 70 and corresponding reply to Vimeo "dispute." Regarding "whether use of copyrighted music was authorized or fair use" see response to ¶8, supra, which is incorporated herein by reference; Columbia Pictures Industries, Inc. v. Fung, 710 F. 3d 1020, 1043 (9th Cir. 2013) (finding "material in question was sufficiently current and well-known that it would have been objectively obvious to a reasonable person that the material ...was both copyrighted and not licensed to random members of the public").* | inference of whether the uploader did or did not have permission, or needed permission, to use music in that video. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97. <br><br> • Plaintiffs' speculation, argument and conclusory statements cannot raise a factual dispute. *See supra* Part B. |
| **9.** Vimeo employees had difficulty determining whether the use of music in a video on Vimeo is infringing. For example: | | |
| **9(a).** Andrea Allen: Allen Depo. 94:12-20 ("How would I know? I don't know how I would know" if a user was using copyrighted music); 95:23-96:5 (asked if she ever came across a user who used commercial recorded music she did not own, answering "I don't know if they own the music or not"); 201:21-202:6 (does not know whether a use necessarily violates Vimeo's guidelines "because I don't know whether or not the person has a license to use the music or not"). | *Disputed. Ms. Allen's self-interested denials that she could ever "know" whether use of copyrighted music was infringing are contravened by her ease at responding to questions concerning Vimeo's policies toward unauthorized use of copyrighted music, and rendered non-credible by her own practices using unlicensed music and participating in the Videos at issue. See. e.g., Allen Depo. (Frackman Decl. Ex. 3, Dkt. 88-4) at 126:5-11 ("If Vimeo does not receive a DMCA takedown notice, would a video that uses copyrighted music without the permission of the copyright owner be placed in Video Purgatory [i.e., removed]"? A. "Not that I know of, no."). Plaintiffs' SSUF ¶ 49 (not disputed that Allen uploaded "more than ten, less than 20" videos containing music ripped from iTunes; Video Ex. 195 (stating: "Filmed in Union Square Park. By* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted, including Ms. Allen's undisputed testimony. *See supra* Part A. In addition: <br><br> • Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B. <br><br> • Awareness of the presence of music in a video cannot give rise to an inference of knowledge of |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *Andrea 'AA' Allen, while I visited her at the Vimeo offices in Manhattan."). Ms. Allen's own practices with respect to unauthorized use of copyrighted music support an inference that she knew others were doing the same, and that she (or a reasonable person) could recognize this when she saw it.* | infringement. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97. |
| **9(b).**  Dalas Verdugo: Verdugo Depo. 72:11-21 ("How would I know?" whether an original video copied commercial music that the user did not make); 75:24-76:10 ("How would we know if they have permission [to use copyrighted music in a video]?" … I don't know how we would make that determination."); 76:15-21 (if an uploader says "I don't own the music," it might be acceptable because "[i]t would still be possible that it could be [a] fair use"). | *Disputed. Mr. Verdugo testified that when the owner of copyrighted music was the one who uploaded videos to Vimeo, he could determine this because "[g]enerally, it's under their name." Plaintiffs' SSUF ¶ 127.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Verdugo's undisputed testimony.  *See supra* Part A.  In addition, Plaintiffs misstate Mr. Verdugo's testimony. *See* Vimeo's response to Plaintiffs' SSUF ¶ 127. |
| **9(c).**  Blake Whitman: Whitman Depo. 110:7-23 (a video that uses copyrighted music without the permission of the owner may not violate Vimeo's Terms of Service when "there are units of fair use"). | *Disputed. The cited testimony from Mr. Whitman's deposition nowhere indicates he had "difficulty." As in the testimony of Ms. Allen and Mr. Verdugo, Mr. Whitman's testimony also is entirely speculative and is addressed to no specific video, let alone any Videos among the 307 at issue.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Whitman's undisputed testimony.  *See supra* Part A. In addition, Mr. Whitman's testimony is based on his personal knowledge in response to Plaintiffs' counsel's question. |
| **10.**   Vimeo employees did not know whether the uploaders of the Videos-in-Suit did or did not have or need permission to use the Works.  For example: | *Disputed. The evidence cited below does not support that Vimeo employees, either generally or with respect to the specific individuals referenced, "did not know" whether uploaders of the Videos "had or needed" permission to use the Works.  Vimeo knew it needed to receive permission from users to exploit their videos, and the individuals cited made their own videos using copyrighted music without permission and encouraged others to do so.  See, e.g., Cheah Declaration, Ex. 1 at ¶ 9 ("Licenses Granted By You") (Dkt. 55-1); SSUF ¶¶ 29, 42, 46-47, 50-51, 62, 158, 159, 164.  Far from being evidence of "not knowing," all of the specific responses below, incorporated into this general response by reference, are evidence if not of red-flag knowledge then of Vimeo's willful blindness with respect to specific infringements.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo* |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | | *III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Awareness of the presence of music in a video cannot give rise to an inference that permission was needed. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97. |
| **10(a).**   Video No. 20 (and other David Fishel videos): Lodwick Depo. 141:10-143:22 (did not know if Connected Ventures employee David Fishel asked for permission to use sound recording in Video No. 20, or any of his videos). | *Disputed. The cited testimony in its context does not support that Vimeo employees, including Mr. Lodwick, "did not know" whether Connected Ventures employee David Fishel (of "Davey Dance Blog") "had or needed permission to use the Works" used in "Davey Dance Blog" videos at issue, which included works by the Beatles, Beastie Boys, David Bowie, and others. See also SSUF ¶¶ 24, 119-122.* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Lodwick's undisputed testimony. *See supra* Part A. |
| **10(b).**   Video No. 31: Lodwick Depo. 166:7-167:12 (referring to Video No. 31, in response to whether uploader "may have owned the sound recording," answering: "I have no idea. I mean, she may have owned it or not.  I don't know."). | *Disputed. The cited testimony in its context does not support that Vimeo employees, including Mr. Lodwick, "did not know" whether the uploader of Video No. 31, his former girlfriend, "had or needed permission" to use either the sound recording or musical composition for the Fergie song, "Glamorous"). See Video Ex. 31; Lodwick Depo. 165:10-167:12 (Frackman Decl. Ex. 1, Dkt. 88-1).* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Lodwick's undisputed testimony. *See supra* Part A. |
| **10(c).**   Video No. 51: Lodwick Depo. 156:2-158:19 (did not know if uploader had permission to use music in Video No. 51, a "lip dub" that he commented on, testifying "I was not aware of his relationship to the song or to the rights to the recording"). | *Disputed. The cited testimony in its context does not support that Vimeo employees, including Mr. Lodwick, "did not know" whether the uploader of Video No. 51, his brother Eric Lodwick, "had or needed permission" to use either the sound recording or the musical composition "Venus" performed by the artist Air. See Video Ex. 51; Lodwick Depo. 264:18-265:11 (Frackman Decl. Ex. 1, Dkt. 88-2).* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Lodwick's undisputed testimony. *See supra* Part A. |
| **10(d).**   Video No. 86: Marcus Depo. 120:13-121:4 (in reference to Video No. 86: "Q. Was this a video authorized by the artist Coldplay or the owner of the music embodied?  A. I don't know."). | *Disputed. The cited testimony in its context does not support that Vimeo employees, including Mr. Marcus, "did not know" whether the uploader of Video No. 86, "Cinema Resistance," "had or needed permission" to use the sound recording "Lost" by Coldplay.  See Video Ex. 86 (including comment by Marcus that the video "reminds me of a trend that I foresaw while working at Vimeo… [T]he web makes it possible for every fan to produce their own video interpretation that both celebrates and helps bring to life a song that has personal value.").* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Marcus's undisputed testimony. *See supra* Part A. |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| **10(e).** Video No. 207: Whitman Depo. 166:11-18 (testifying he had "no idea" if the uploader had permission to use the music or sound recording). | *Disputed. The cited testimony in its context does not support that Vimeo employees, including Mr. Whitman, "did not know" whether the uploader of Video No. 207, "wes johnson," "had or needed permission" to use the sound recording from the Amélie soundtrack by Yann Tiersen. See, e.g., SSUF ¶ 158 (asked by user about Vimeo's policy concerning the use of copyrighted music, Mr. Whitman responded that policy was "Don't ask, don't tell.") (which he followed by an emoticon "wink"; see Ex. 164 (Dkt. 94-8 at p. 17)); SSUF ¶ 159 (Whitman: "We can't officially tell you that using copyright music is OK. But…"); SSUF ¶ 152 (not disputed that Mr. Whitman stated, "As many of you know, finding music for your videos can be somewhat... well, painful. Licensing music on your own can be confusing and finding good free music can take forever. Many of us here at Vimeo are video creators or filmmakers as well and we experience these frustrations on a regular basis.").* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, including Mr. Whitman's undisputed testimony. *See supra* Part A. In addition:<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **11.** No Vimeo employees actually knew that the use of the Works in any of the Videos-in-Suit was an infringing use. *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 543 n.3 (S.D.N.Y. 2013) ("No evidence in the record supported a finding of actual knowledge under 17 U.S.C. § 512(c)(1)(A)(i)."); Berkley 2d Supp. Decl., Ex. B. | *Disputed. The evidence cited does not support the statement. Defendants cite a footnote from the Court's December 2013 opinion referring to 35 videos, of which only a subset are among the 307 Videos at issue. See 972 F. Supp. 2d at 543 (referring to Vimeo's argument on reconsideration as to 35 videos). At that juncture, the Court was not addressing any of the Videos added in Plaintiffs' Amended Complaints or any of the videos on which Plaintiffs did not move for reconsideration, including but not limited to videos uploaded by Vimeo employees. See Plaintiffs' SSUF ¶ 29. There is at least an inference that Vimeo employees "actually knew" the Videos were infringing since they infringed themselves and encouraged users to do the same. See, e.g., SSUF ¶¶ 29, 39-59, 62-68, 103-117, 119-123, 154-167, 169-173.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **12.** Vimeo frequently receives counter-notifications pursuant to the DMCA in response to takedown notices. Vimeo received at least three such counter-notices in response to Vimeo's removal of videos identified by Plaintiffs' proposed amended schedules, which Vimeo treated as de facto DMCA notices. Cheah Decl. ¶¶ 29, 44, 50-51 & Exs. 7 & 12; Vimeo's SUF ¶¶ 36 & | *Disputed. Defendants' statement is not supported by the evidence cited. Vimeo's SUF ¶¶ 36 and 57 have nothing to do with whether Vimeo "frequently" receives such counter-notifications, or whether Vimeo treated Plaintiffs' proposed amended schedules as "de facto DMCA notices," and nothing in this statement or the cited evidence indicates what is meant by "frequently" or "at least," or whether the alleged counternotices were withdrawn or had any merit. The paragraphs cited from Mr. Cheah's declaration lack foundation, and Mr. Cheah's statement that "Vimeo routinely receives counter-notifications" (not "frequently") is unsupported and violates the Best Evidence Rule.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Mr. Cheah's testimony is based on his personal knowledge, including his oversight and implementation of Vimeo's past and present copyright policies and compliance. Cheah Decl., ¶ 1. |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| 57 (undisputed for the purposes of the motion). | *Accordingly, the cited paragraphs are inadmissible, and the statement is irrelevant to Vimeo's red-flag knowledge with respect to the Videos at issue.* | |
| 13.  One of the counter-notifications Vimeo received after Vimeo's removal of videos identified by Plaintiffs' proposed amended schedules represented:  "We are the original Directors of the music video, as contracted by Capitol Records, LLC and our contract with Capitol Records stipulates that we may use a copy of the music video to promote ourselves as Directors."  Cheah Decl. ¶ 51 & Ex. 12; Vimeo's SUF ¶¶ 36 & 57 (undisputed for the purposes of the motion). | *Disputed.  The alleged counter-notification was withdrawn, and the infringing video in question (at the URL https://vimeo.com/9197894), which is not included in Plaintiffs' Amended Schedules, remains disabled on the Vimeo website to this day. See Cheah Decl., ¶ 51; Vimeo SUF ¶ 57(noting withdrawal of counter-notification). Further, there is no basis to assume the uploader had the right to "use" the video by uploading it to Vimeo, and no basis to assume Vimeo could in turn "use" the video by reproducing it and making it freely available to the public.  See, e.g., SSUF ¶125 (not disputed that Jacob Lodwick proposed changing Vimeo's policy to "no longer allow people to post videos that they were closely involved in" and the "upload" page to say "You can only upload a video if you are the copyright holder," but that Vimeo did not change its policy); Depo. Ex. 175 (Frackman Decl. Ex. 12, Dkt. 94-8 at p. 36) (Lodwick: "For example, if Sony hires me to work on a Bravia ad, I cannot post the video to Vimeo… I think the text on the upload page must say, 'You can only upload a video if you are the copyright holder.")*. | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br>• Plaintiffs' argument cannot raise a factual dispute.  *See supra* Part B. |
| **III.  Plaintiffs' Asserted Indicators of Vimeo's Red Flag Knowledge** | | |
| 16.  Plaintiffs have not identified any evidence that any of the Videos-in-Suit affirmatively reflect on their face that any use of the Works was not licensed.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Frackman Supp. Decl., Exs. A & B; Berkley 2d Supp. Decl., Ex. B. | *Disputed.  Defendants' statement is not supported by the materials cited. Given the materials presented in Plaintiffs' Summary Chart and Supplemental Statement of Facts, a reasonable person knowing what Vimeo knew could certainly find that the Videos "affirmatively reflected on their face" that use of the Works was not licensed. Defendants' citation only to their own conclusory "Response Chart" and to Plaintiffs' Summary Chart, list of videos, and (partially) the Videos themselves does not establish that Plaintiffs have not established such evidence.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br>• Plaintiffs do not identify any specific materials disputing the fact asserted, and it is thus admitted. L.R. 56.1(d).<br>• Plaintiffs' speculation cannot raise a factual dispute.  *See supra* Part B. |
| 17.  Plaintiffs have not identified any evidence that any of the Videos-in-Suit affirmatively reflect on their face that any use of the Works was not a fair use.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Frackman Supp. Decl., | *Disputed.  Defendants' statement is not supported by the materials cited. See, e.g., Plaintiffs' SSUF ¶¶ 135-138 (citing Summary Chart with respect to "duration and nature of use"), ¶ 168 (not disputed that Vimeo page dedicated to "fair use" identifying "unauthorized use of a popular song in the background of your video" as an example of a use that would not be fair ); see also SSUF ¶ 41 (Vimeo advice that "adding a third* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted, as Plaintiffs identify no evidence that any of the Videos-in-Suit affirmatively reflect on their face that any use of the Works |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| Exs. A & B; Berkley 2d Supp. Decl., Ex. B. | *party's copyrighted content to a video generally … constitutes copyright infringement").* | was not fair.  *See supra* Part A.  In addition: <br><br> • Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| 18.  It is not possible for a Vimeo employee who viewed any Video-in-Suit and visited its corresponding webpage to know that the use of a Work in the Video was unlicensed or otherwise unauthorized conducting further investigation.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Declaration of Michael A. Cheah [Dkt. 55] ("Cheah Decl.") ¶¶ 44-45; Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Exs. B & C (Videos and corresponding webpages). | *Disputed. As stated, Defendants' statement is unintelligible. To the extent Defendants' statement was intended to read "without conducting further investigation," the statement is disputed as not supported by the cited materials. It also inappropriately advances as "fact" a legal conclusion or at best a premature mixed conclusion of law and fact. Defendants do not dispute that at least 300 of the 307 Videos offered information on their web pages and/or in the videos themselves crediting the specific music used, including at least 80 Videos using "music credits" in the form suggested to users by Vimeo's cofounder Jacob Lodwick. See Plaintiffs' SSUF ¶¶ 60-68. Nor do Defendants dispute that the music was typically used from the beginning of the Videos and generally throughout all or a substantial portion of the Videos. SSUF ¶¶ 135-137. Vimeo employees, or a reasonable person in their stead, could easily infer that as with the videos they created themselves, and in accordance with the advice and instructions they provided to users, the uploaders' uses of Plaintiffs' music in the Videos was "unlicensed or otherwise unauthorized." See SSUF 29, 39-59, 69-70, 103-117, 119-137. Defendants' citation only to their own conclusory "Response Chart," to the foundationless declaration testimony of its in-house counsel Michael Cheah, and generally to Plaintiffs' Summary Chart, videos, and screenshots – excluding Plaintiffs' other submitted evidence – does not establish that such knowledge was "not possible" for Vimeo employees.* | <u>No genuine dispute:</u>  Plaintiffs' response (which they correctly interpret as intended to read "***without*** conducting further investigation") does not genuinely dispute the fact as asserted.  *See supra* Part A.  In addition: <br><br> • This is a factual statement about Vimeo employees' possible knowledge of license or authorization based on a viewing of a Video-in-Suit and its corresponding webpage. The absence of record evidence is factual.  *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). <br><br> • Plaintiffs cite no evidence, but only speculation, that Vimeo employees could know that the use of any Work in any Video-in-Suit was licensed or unauthorized without conducting further investigation.  *See supra* Part B; *Vimeo III*, 826 F.3d at 97 (employee cannot "be automatically expected to know" wither the user had authorization or a license,  and Vimeo "is under no legal obligation to have its employees investigate to determine the answers"). <br><br> • Plaintiffs' citation to evidence not specific to the Videos-in-Suit is |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | | irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Awareness of the presence of music in a Video-in-Suit cannot give rise to an inference the use was unlicensed or unauthorized. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97.<br><br>• Mr. Cheah's testimony is based on his personal knowledge, including his oversight and implementation of Vimeo's past and present copyright policies and compliance. Cheah Decl., ¶ 1. |
| **19.** It is not possible for a Vimeo employee who viewed any Video-in-Suit and visited its corresponding webpage to know that the use of a Work in the Video was not a fair use without conducting further investigation. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Cheah Decl. ¶¶ 44-45; Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Exs. B & C. | *Disputed. This statement is not supported by the cited materials, and is contradicted by admissible evidence in the record. It also inappropriately advances as "fact" a legal conclusion or at best a premature mixed conclusion of law and fact, and ignores that proper analysis relates to Vimeo's exploitation of the Works, not only their unauthorized use by the Videos' creators or uploaders. The cited paragraphs of the Cheah declaration are conclusory and lacking foundation: they supply no basis for Mr. Cheah, Vimeo's in-house counsel, being able to speak for all Vimeo employees with respect to the Videos at issue, and are not admissible evidence. Additionally, they are irrelevant in that they do not address any purported need for "investigation." Nor do the conclusory assertions and arguments offered in Vimeo's "Response Chart" provide any admissible evidence going to this statement. The other materials cited support the opposite of Defendants' statement. See Summary Chart (Berkley 2nd Suppl. Decl. Exs. B-C) at columns H-K, R, and X-AI (identifying features and statistics of Videos); Frackman Suppl. Decl. Exs. C (Video Exhibits 1-306). See also Plaintiffs' SSUF ¶ 168 (not disputed that posting by Vimeo regarding "fair use" purported that "Vimeo moderators remove videos that constitute clear violations when they are brought to our attention," and that "Examples include rips of movies, television shows, and music videos — or the unauthorized use of a popular song in the background of your video").* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• This is a factual statement about Vimeo employees' possible knowledge of fair use based on a viewing of a Video-in-Suit and its corresponding webpage. The absence of record evidence is factual. *See Gallo*, 22 F.3d at 1223-24.<br><br>• Plaintiffs cite no evidence, but only speculation, that Vimeo employees could know that the use of any Work in any Video-in-Suit was fair without conducting further investigation. *See supra* Part B; *Vimeo III*, 826 F.3d at 97 (employee "cannot be expected to know how to distinguish" infringements from fair uses, and Vimeo "is under no legal obligation to have its employees investigate to determine the answer[]"). |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | | • Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). <br><br> • Mr. Cheah's testimony is based on his personal knowledge, including his oversight and implementation of Vimeo's past and present copyright policies and compliance.  Cheah Decl., ¶ 1. |
| **20.**   Plaintiffs have not identified any evidence that Vimeo employees knew that the use of any Work in any of the Videos-in-Suit was unauthorized before being notified by Plaintiffs.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Exs. B & C. | *Disputed. The statement is not supported by the cited materials, which are improperly limited only to Plaintiffs' Summary Chart and Vimeo's so-called "Response Chart," and is in actuality disproven by them and by other evidence in the record. Defendants concede that at least 306 and 307 of the videos were viewed "in whole or part" by Vimeo employees (Anten Suppl. Decl. Exs. 1 & 1-A), and do not in any meaningful fashion contest the Videos' features, statistics, interaction information, and accompanying web page information as set forth in Plaintiffs' Summary Chart. The Summary Chart expressly states it is not exhaustive (nor could it be) and thus also directs in its heading row to Plaintiffs' memorandum and Supplemental Statement of Facts. The Videos themselves and web page evidence supplied in Frackman Suppl. Decl. Ex. C (Video Exhibits 1-306) speak for themselves in terms of the uploaders' lack of authorization to create and/or disseminate the Videos. See Plaintiffs SSUF ¶¶ 69-70. Vimeo employees also "knew that the use…was unauthorized" because, inter alia, they knew that Vimeo had not licensed rights to either sound recordings or musical compositions, and that this was a "legal issue" for Vimeo since "adding a third party's copyrighted content to a video generally … constitutes copyright infringement." They knew they created and posted infringing videos themselves, including Videos at issue. They advised Vimeo users that using copyrighted music in videos without authorization on the Vimeo website was acceptable, and provided instructions on how to create infringing videos and share with other users what music was being infringed. See, e.g., Plaintiffs' SSUF ¶¶ 1, 29, 39-68, 103-110, 155-173.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A.  In addition: <br><br> • Plaintiffs cite no evidence, but only speculation, that Vimeo employees knew that the use of any Work in any Video-in-Suit was unauthorized before being notified by Plaintiffs.  *See supra* Part B; *Vimeo III*, 826 F.3d at 97 ("Nor can every employee of a service provider be automatically expected to know how likely or unlikely it may be that the user who posted the material had authorization to use the copyrighted music."). <br><br> • Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). <br><br> • Awareness of the presence of music in a Video-in-Suit cannot give rise to an inference the use was |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | | unauthorized. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-97. |
| **21.** More than half of the Videos-in-Suit were subject to just a single "interaction" by a single Vimeo employee.[FN4] Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C.<br><br>    [FN4]  *See Video Nos. 16, 22, 25, 26, 29, 30, 32, 32-B, 38, 44, 52-55, 60-64, 68, 69, 71, 75, 76, 78-81, 83, 87, 91, 92, 97, 98, 100, 103-107, 109, 110, 112, 114, 116, 117, 120, 124-126, 128, 130-133, 137, 141, 142, 144, 147-155, 157, 160-164, 166-169, 171-174, 177, 180-182, 184-187, 191, 193, 196, 202, 203, 208-212, 217-219, 221-224, 226-228, 230, 234, 235, 237, 239-243, 246-248, 251, 253-258, 260-267, 269-276, 279-306.* | *Disputed. The statement is not supported by the cited evidence, including because the Summary Chart does not purport to be a self-contained, fully exhaustive summary of all of Plaintiffs' evidence supporting Vimeo's knowledge of and interaction with the 307 Videos, and because the web page documentation of the Videos submitted as Frackman Ex. C (Videos Exhibits 1-306) does not reflect all employee interaction with the Videos, including Videos employees watched without further interaction among the nearly 13 million documented views of the Videos. See Summary Chart (Berkley 2d Suppl. Decl. Exs. B-C) at heading row; Berkley 2d Suppl. Decl., Ex. M (Videos viewed a minimum of 12,984,020 times, not including absent data); SSUF ¶¶ 8, 10, 31-34, 119-121 (undisputed facts regarding "following" and "contacts," included Vimeo employees who "followed" or were "contacts" with other employees and thus were "subscribed" to videos their contacts uploaded or liked); SSUF ¶¶ 2, 3, 15-16, 79 (videos regularly watched by Vimeo employees); SSUF ¶ 81 (not disputed by Vimeo that Blake Whitman reviewed daily videos placed on Staff Picks Channel, including Videos he is not documented as "liking," commenting on, or otherwise interacting with).* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br>• Plaintiffs cite no evidence, but only speculation, that the identified Videos-in-Suit had just one employee interaction.  *See supra* Part B.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **22.** There is no direct evidence that any of the Vimeo employees identified in Plaintiffs' Summary Chart actually watched the entirety of each of the Videos-in-Suit.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. Evidence that Vimeo employees "actually watched the entirety" of each Video is both direct and inferential. Putting to the side Videos actually created by Vimeo employees, who presumably watched their own creations, (see SSUF 29) Vimeo employees testified that videos were watched in their entirety. SSUF ¶15 (statement by Dalas Verdugo, not disputed by Vimeo, explaining "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community."); SSUF ¶ 22 (undisputed statement by Blake Whitman identifying the limited situation in which he possibly might not watch the entirety of a video: "I sometimes stop in the middle when they're really bad"). Further, the statement is largely irrelevant because in the vast majority of instances the infringed music is played from the beginning of the video. See Berkley Suppl. Decl., Exs. B-C (Summary Chart) at Column Z; SSUF ¶ 135 (not disputed that in more than 250 instances,* | <u>No genuine dispute:</u>  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B; *see also Vimeo III*, 826 F.3d at 96 ("the employee's viewing might have been brief").<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *the infringing music commences within the first 10 seconds of the video, and that in 275 instances, it begins within the first 30 seconds).* | |
| **23.** There is no direct evidence that any of the Vimeo employees identified in Plaintiffs' Summary Chart actually watched part of each of the Videos-in-Suit. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. Defendants' August 16, 2017 memorandum asserts that whether "a Vimeo employee watched all or part of the Video" was "never really in dispute for purposes of this motion" (Memorandum at 2), and the "Vimeo Response Chart" cited by Defendants concedes that for at least 306 of the 307 of the Videos, there is "Evidence that a Vimeo Employee Saw at Least Some of the Video." Anten Supp. Decl., Exs. 1 & 1-A at Column D.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. |
| **24.** There is no evidence that any of the Vimeo employees identified in Plaintiffs' Summary Chart watched the Videos-in-Suit for the purpose of assessing infringement. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. Defendants' August 16, 2017 memorandum asserts that wheth-er "a Vimeo employee watched all or part of the Video" was "never really in dispute for purposes of this motion" (Memorandum at 2), and the "Vimeo Response Chart" cited by Defendants concedes that for at least 306 of the 307 of the Videos, there is "Evidence that a Vimeo Employee Saw at Least Some of the Video." Anten Supp. Decl., Exs. 1 & 1-A at Column D. Among other things, Vimeo asserts that it reviews videos for compliance with its Terms of Service, which purportedly disallow copyright infringement. See infra, ¶¶ 47, 57; Vimeo's original Statement of Facts (Dkt. 54) at ¶¶ 27. 29, 30, 47; Cheah Decl. (Dkt. 55-1), Ex. 1. Additionally, the statement is irrelevant to the extent it suggests such a "purpose" was necessary, or that a reasonable person would not have found infringement apparent even if not watching them for the purpose of "assessing infringement."* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **25.** There is no evidence that any of the Vimeo employees identified in Plaintiffs' Summary Chart made a finding as to infringement (or lack thereof) with respect to any of the Videos-in-Suit. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. The statement is not supported by the evidence cited and is contradicted by the record, and additionally posits as "fact" an improper and ambiguous, mixed conclusion of law and fact (e.g., "finding of infringement"). The facts of the videos suggest that a "finding" was made, or by a reasonable person would have been made, including because none of the referenced videos reflect on their face any authorization or license held by the uploader to use Plaintiffs' Works, the overwhelming majority include clear "credits" identifying the music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138. Vimeo employees, who infringed themselves, knew that Vimeo "allowed" and "ignored" user-created videos that infringed copyright music, encouraged users to post videos whose creation they "participated in" without authorization from copyright owners, and knew that using commercial recordings to serve as the "background" of* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *videos was not fair use. See, e.g., Plaintiffs' SSUF 29, 39-59, 66-67, 103-117, 124-127, 154-173. On the evidence presented, it is natural and inferable that Vimeo employees "found" the videos to be infringing even while their collective practice was to ignore this. See, e.g., SSUF ¶ 157 ("we ignore music"); ¶ 164 (responding "Technically no" to whether user could "legally" use copyrighted music in videos on "private-invite channel," before implying user could proceed); ¶ 163 ("We allow it, however if the copyright holder sent us a legal takedown notice, we would have to comply.").* | • Evidence that a Video-in-Suit contains music cannot give rise to an inference that the use was infringing. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98.<br><br>• Whether a Vimeo employee actually made a particular finding is a factual issue that Plaintiffs do not dispute. |
| **26.**   There is no evidence that any of the Vimeo employees identified in Plaintiffs' Summary Chart believed that any of the Videos-in-Suit posed a risk of infringement.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. The statement is actually disproven by the evidence cited, and is contradicted by evidence in the record. It additionally is impermissibly vague and ambiguous as to what is meant by "posed a risk of infringement." Defendants cite only Plaintiffs' Summary Chart and Vimeo's Response Chart to support this statement, but even these alone furnish evidence supporting that Vimeo employees "believed" the Videos "posed a risk of infringement." Vimeo's so-called "Response Chart" concedes that all or virtually all of the Videos were viewed by Vimeo employees, and acknowledges the near universal presence of features identifying the specific music used. The conclusory assertions and arguments otherwise contained in it are not admissible evidence. See Anten Supp. Decl., Exs. 1 & 1-A. The facts distilled in Plaintiffs' Summary Chart support that Vimeo employees "believed" (or that a reasonable person in their position would have believed) that the videos were infringing, including because none of the referenced videos reflect on their face any authorization or license held by the uploader to use Plaintiffs' Works, the overwhelming majority include clear "credits" identifying the music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138. Furthermore, Vimeo employees, including uploaders of Videos at issue, knew that Vimeo "ignore[d] music," that "legality doesn't matter when it comes to the uploading rules ... it's about [users] making it," that "big media companies might dispute our use of copyrighted music in our videos," and that "Soundtracks are a legal issue that we are working through currently and won't comment on." SSUF 42, 157, 161. All of these serve to controvert Defendants' statement. See also responses to ¶ 25, supra, and ¶ 52, infra, which are incorporated herein by reference.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Evidence that a Video-in-Suit contains music cannot give rise to an inference that the use posed a risk of infringement.  *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98. |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| **27.** There are no documents showing that any of the Vimeo employees identified in Plaintiffs' Summary Chart discussed whether any of the Videos-in-Suit were infringing. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. The assertion that there are "no documents showing" such discussion is unsupported merely by citing to Plaintiffs' Summary Chart and to Vimeo's "Response," and is in fact contradicted by the materials referenced in the Summary Chart and other evidence. See, e.g., Plaintiffs' SSUF ¶ 48 (not disputed that after being informed that his lip dub video [Video No. 238] had been removed pursuant to Plaintiffs' December 2008 notice, Blake Whitman sent an e-mail to all Vimeo staff members stating "I am a victim!"); SSUF ¶¶ 54 -55 (not disputed that Vimeo employees circulated e-mails regarding the cease-and-desist letter sent by Plaintiffs to Vimeo in December 2008, which included the demand that several videos posted by Vimeo employees be removed, including an e-mail stating that "also busted" were "Josh Abramson, Jeff Rubin, David Fishel, and SteveR."). SSUF ¶ 40 (not disputed that Vimeo employee Julia Quinn (a/k/a Heffernan), the uploader of three Videos at issue, posted on her Vimeo account profile: "I had to take all my videos down that had copyrighted music on them 2/6/09. Sorry. :( ."); SSUF ¶ 39 (not disputed that in or about February 2009, a meeting was held with Vimeo staff instructing them to cease using unlicensed copyrighted music in videos they uploaded to the Vimeo Website (although videos were not removed and were included in Plaintiffs' schedules); see also, e.g., Plaintiffs' SUF ¶¶ 42, 157, 161 (Vimeo employees discussed that "we ignore music" since "legality doesn't matter when it comes to the uploading rules ... it's about [users] making it"), that "big media companies might dispute our use of copyrighted music in our videos," and that "Soundtracks are a legal issue that we are working through currently and won't comment on."). Additionally, whether Vimeo employees "discussed" whether the 307 Videos at issue were infringing is irrelevant to Vimeo's red-flag knowledge of and willful blindness to infringement.* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Evidence that a Video contains music cannot give rise to an inference that the use was infringing. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98. |
| **28.** There is no testimony indicating that any of the Vimeo employees identified in Plaintiffs' Summary Chart considered whether any of the Videos-in-Suit were infringing. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B.. | *Disputed. The assertion that there is "no testimony indicating" such "consideration" by Vimeo employees is unsupported, and cannot be supported, merely by citing to Plaintiffs' Summary Chart and to Vimeo's "Response," and is contradicted by the materials referenced in the Summary Chart and other evidence. All of the Works at issue contained copyrighted commercial music (as Vimeo recommended users employ in their videos), and the videos almost universally identified the recordings and compositions used in their titles, descriptions, tags, in the videos themselves, and/or in special "music credits" of the type Vimeo's own employees recommended. See, e.g., Plaintiffs' SSUF ¶¶ 60-70. Vimeo* | <u>No genuine dispute</u>:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *employees knew that Vimeo had not licensed rights to either sound recordings or musical compositions, knew (or should have known) that the music was not licensed or authorized to be used by the uploaders of these videos, including Vimeo employees themselves, and such "considerations" are reflected by their testimony. See Plaintiffs' SSUF ¶¶ 1, 29, 39-56, 139 (including testimony referenced in Plaintiffs' original Statement of Facts ); SSUF ¶ 127 (testimony by Dalas Verdugo that when the owner of copyrighted music was the one who uploaded videos to Vimeo, he could determine this because "[g]enerally, it's under their name."; see also Verdugo Depo. at 247:9-248:16 (Frackman Decl. Ex. 5, Dkt. 89-2) and Video Ex. 34. Additionally, whether Vimeo employees actually "considered" whether the 307 Videos were infringing is irrelevant to Vimeo's red-flag knowledge of infringement.* | irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Evidence that a Video contains music cannot give rise to an inference that the use was infringing. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98. |
| **A. "Music Credits"** | | |
| **29.** There is no evidence that Vimeo employees actually read all of the titles, descriptions, tags, or comments that purport to identify the name of a song or artist for all of the Videos-in-Suit.  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B (column K). | *Disputed. There is at least an inference that Vimeo employees actually read such materials, and Defendants' citation only to Column K of Plaintiffs' Summary Chart and to Vimeo's so-called "Response Chart" does not demonstrate that there is "no evidence" supporting that they did. To the contrary, there is evidence. See Plaintiffs' SSUF ¶¶ 2-3, 15-19, 71, 76, 78, 82 (regarding Vimeo active participation in community, including watching and commenting on videos and function of "promoting" materials to users, including the need to be "sure it's something you want to promote to the community"); ¶¶ 47, 57 (moderators review videos for compliance with Terms of Service); ¶¶ 89, 100 (moderators exercise "discretion" when making decisions to whitelist or bury videos); see also Plaintiffs' initial SUF (Dkt. 72) at ¶¶ 173-175 (regarding Vimeo "Comment Scanner" tool); ¶ 111 (Vimeo reviews videos to determine if they are "user-generated"); Cheah Declaration (Dkt. 55) at ¶ 15 ("Vimeo takes steps to remove uploaded content that violates its Terms of Service. ... Vimeo staff review videos that have been identified by the various Mod Tools or complaints to determine if they violate the Terms of Service."). Further, Defendants' statement is unintelligibly ambiguous insofar as it is unclear whether it is intended to apply separately to each video and to each Vimeo employee, or instead asserts collectively that there is "no evidence" that each and every identifying title, description, tag, or comment was read by each and every employee.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| 31.  According to Plaintiffs' Summary Chart, for many of the Videos-in-Suit, a Vimeo employee would have to already be familiar with the song or artist to know that a tag, title description or comment was a "music credit or related attribution."  For example, for Video No. 281, the only claimed indication of music credit or related attribution is the title "RBD – Inalcanzable."  If a Vimeo employee is not already aware that "RBD" is an artist and "Inalcanzable" is a song, this information would not alone convey the presence of music.[FN6]  Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart) (column C); Berkley 2d Supp. Decl., Ex. B (column K). | *Disputed. The statement is not supported by the cited evidence, including because the statement does not follow "according to Plaintiffs' Summary Chart" and consists of a mixed conclusion of law and fact to the extent it requires determining the threshold for "knowing" or "conveying." Vimeo's other purported "examples" for this statement include credits and attributions such as "Coldplay," "The Rolling Stones - Dancing With Mr. D," and "Pink Floyd." Vimeo employees were familiar with conventions for "crediting" the unauthorized use of copyrighted music on the Vimeo Website (which Vimeo itself recommended), and were familiar with prevalence of these conventions on the Vimeo Website. See Plaintiffs' SSUF ¶¶ 60-68, 141-144, 148-151, 157, 160. Even in Vimeo's example of "RBD – Inalcanzable," a Vimeo employee familiar with the Vimeo website would not have to be "familiar with the song or artist" to intuit this was a "music credit or related attribution."* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A.  In addition:<br><br>• Plaintiffs cite no evidence disputing that, for the examples identified, a Vimeo employee would have to be familiar with the song or artist to know that a tag, title description or comment was a "music credit or related attribution."<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant.  *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| [FN6]  *Other examples include Video Nos. 27, 78, 85, 102, 117, 136, 155, 171, 176, 191, 193, 204, 216, 217, 221, 242, 271, 274, 281, 293, 297.* | | |
| 32.  The information supplied by uploaders to accompany a video (*e.g.*, title, credits, description, etc.) can make it appear that the uploader has an official relationship with the owner of the copyright.  For example, the description on the webpage for Video No. 201 states: "Commissioned by Nicola Brown ***for Virgin/EMI***" (emphasis added).  Other descriptions on Video webpages explicitly refer to Capitol Records and EMI or include copyright notices, which may reasonably communicating permission to an ordinary person.  Frackman Supp. Decl., Exs. B & C, Video Exs. & Video Nos. 114, 139, 159, 201 ("Commissioned by Nicola Brown for Virgin/EMI"), 259, | *Disputed. The statement that a video was "commissioned for" a particular copyright owner does not logically "make it appear" that the uploader has a "official relationship" with the copyright owner, and Vimeo cites no evidence supporting such a proposition. If anything, it confirms only that the uploader is not the copyright owner. Defendants' statement further is vague, speculative, and improperly argues for a legal conclusion, or at best a mixed conclusion of law and fact, to the extent it argues (without any evidentiary support) that the examples it cites may "reasonably communicat[e] permission to an ordinary person," a proposition for which it provides no support.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A.  In addition<br><br>• Plaintiffs cite no evidence disputing the asserted fact, and it is thus admitted.  L.R. 56.1(d).<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B. |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| 265 (description includes "license exclusive EMI Music France"), 266, 276. | | |
| **B. "Liking" & Commenting** | | |
| **33.** The fact that a Vimeo staff member "liked" or commented on a Video-in-Suit does not necessarily mean that he or she watched all of the Video. It does not even necessarily mean that he or she watched part of the Video. Supplemental Declaration of Andrew Pile [Dkt. 82] ("Pile Supp. Decl."); Whitman Depo. at 167:24-168:2; *Vimeo III*, 826 F.3d at 96 (fact that an employee viewed enough of a video to like or comment "would not show that she had ascertained that its audio track contains all or virtually all of a piece of music"). | *Disputed. The statement does not follow from the cited passage in the Second Circuit opinion, which was made without reference to the current evidentiary record, and is controverted by the current record and by Defendants' admissions. See SSUF ¶15 (not disputing statement by Dalas Verdugo, reading in part, "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community."); SSUF ¶ 22 (undisputed statement by Blake Whitman identifying limited situation in which he possibly might not watch the entirety of a video: "I sometimes stop in the middle when they're really bad"; Anten Declaration, Exs. 1 & 1-A (conceding that for all such videos with employees likes or comments identified in Plaintiffs' Summary Chart, there is "Evidence that a Vimeo Employee Saw at Least Some of the Video."); Defendants' August 16, 2017 memorandum at 2 (conceding that whether "a Vimeo employee watched all or part of the Video" was "never really in dispute for purposes of this motion").* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted, which is about "liking" and commenting. *See supra* Part A.  In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **34.** There is no evidence showing that each Vimeo staff member actually watched the entirety of every Video-in-Suit that she "liked" or commented on. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C. | *Disputed. Defendants' statement is not supported by the cited materials, which consist only of Plaintiffs' Summary Chart and Vimeo's Response Chart and thus do not address whether there is "no evidence," and is contradicted by information in the Summary Chart and elsewhere in the record. Further, it is unintelligibly ambiguous insofar as it is unclear whether the statement is intended to pertain separately to each video and/or each Vimeo staff member, or instead asserts collectively that there is "no evidence" that each and every video was watched in its entirety by each and every Vimeo employee who liked or commented upon it. In either scenario, the statement is contravened by evidence in the record. Plaintiffs' SSUF ¶15 (statement by Dalas Verdugo, not disputed by Vimeo: "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community.") SSUF ¶ 22 (undisputed statement by Blake Whitman identifying only one situation in which he might not watch the entirety of a video: "I sometimes stop in the middle when they're really bad"). Further, the statement is irrelevant because in the vast majority of cases the infringed* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted, which is about "liking" and commenting. *See supra* Part A.  In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B; *see also Vimeo III*, 826 F.3d at 96 ("liking" or commenting "would not show" that the viewing had not "been brief").<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *music is played from the beginning of the video and throughout the video. See Berkley Suppl. Decl., Exs. B-C (Summary Chart) at Column Z; SSUF ¶ 135 (not disputed that in more than 250 instances, the infringing music commences within the first 10 seconds of the video, and that in 275 instances, it begins within the first 30 seconds); ¶¶ 136-138.* | |
| **35.** There is no evidence showing that each Vimeo staff member that "liked" or commented on a Video-in-Suit also ascertained that its audio track contained all or virtually all of a sound recording or musical composition Plaintiffs claim to own the copyright. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C. | *Disputed. The statement is not supported by the materials cited, which moreover consist only of Vimeo's so-called "Response Chart," Plaintiffs' Summary Chart, and Video Exhibits 1-306, disregarding Plaintiffs' other evidence. The statement is also irrelevant because whether "Plaintiffs claim to own the copyright" and whether Vimeo employees actually "ascertained" such knowledge are not germane to the red-flag knowledge inquiry. Further, Plaintiffs' statement is also impermissibly ambiguous insofar as it does not clarify whether it is intended to refer to each Staff member and/or each Video separately, or whether it seeks evidence supporting that collectively, each and every Staff member who "liked" or commented on a Video "ascertained" this for each and every Video. Vimeo's own Response Chart affirms there is evidence supporting that all videos with employee "likes" or comments were watched. To the extent the statement is intelligible, the assertion is disputed by other evidence in the record regarding the nature of the Videos and the practices of Vimeo employees who liked or commented on videos. See, e.g., Plaintiffs' SSUF ¶¶ 135-138 (including music-use statistics of Videos reflected in Plaintiffs' Summary Chart); SSUF ¶15 (Dalas Verdugo statement: "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community."); SSUF ¶ 22 (Blake Whitman identification of limited situation in which he possibly might not watch the entirety of a video: "I sometimes stop in the middle when they're really bad").* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B; *see also Vimeo III,* 826 F.3d at 96 ("liking" or commenting "would not show that [the employee] had ascertained that its audio track contains all or virtually all of a piece of music").<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III,* 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **36.** Vimeo employees only "sometimes" read the comments posted on a video's webpage. Whitman Depo. 165:12-21. | *Disputed. The cited page of testimony does not support the assertion that Vimeo employees "only sometimes" read comments, either as to Mr. Whitman himself (who responded first to the question, "Not always" and did not say "only sometimes"), or as to the general practices of all Vimeo employees.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted, which was accurately stated. *See supra* Part A. |
| **37.** Comments for the Videos-in-Suit on the Vimeo site appear "below the fold," requiring the user viewing the webpage to | *Disputed. The cited evidence does not support that "the user viewing the webpage," let alone Vimeo employees, most [sic] always "scroll down" to view comments. The statement is further disputed as vague and* | No genuine dispute: Plaintiffs' response does not genuinely dispute |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| scroll down to view them. Frackman Supp. Decl., Ex. C. | *ambiguous insofar as Defendants do not define "below the fold" and whether "user" refers to Vimeo employees. See also, e.g., Plaintiffs' original SUF ¶¶ 173-174 (not disputed) regarding Vimeo "Comment Scanner" moderation tool.* | the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence disputing the asserted fact, and it is thus admitted. L.R. 56.1(d). |
| **38.** There is no evidence showing that any comment on a Video-in-Suit was made before, rather than after, the Video was "liked," whitelisted, buried, or placed on a channel by a Vimeo employee. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C. | *Disputed. The statement is not supported by the cited evidence. Among other things, it is inferable from the cited evidence that Vimeo employees who both "liked" and commented on particular videos, and whose comments appear after a given comment, also "liked" the video simultaneously after the preceding comment was made. See, e.g., Berkley Supp. Decl., Exs. B-C (Summary Chart) at Video No 84. (and Video Ex. 84). Furthermore, Defendants' statement is largely irrelevant because in the overwhelming majority of cases, the music used was identified in the Video's title, description, and/or in the Video itself in addition to any comments identifying or discussing the music. See Summary Chart at Column K ("Music Credits or Related Attribution"); Plaintiffs' SUF ¶ 61 (not disputed by Vimeo that for "300 of the videos currently at issue, the names of artists and/or song titles are referenced either in the title, description, or tags of the videos, in the videos themselves, or occasionally in posted comments") (emphasis added).* | No genuine dispute: Plaintiffs' response does not genuinely dispute the asserted fact. *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B. |
| **C. Channel** | | |
| **40.** The fact that a Vimeo staff member added a Video-in-Suit to a channel she moderates does not necessarily mean that she watched all of the Video. It does not even necessarily mean that she watched part of the Video. *Vimeo III*, 826 F.3d at 96 (fact that an employee viewed enough of a video to like or comment to add it to a channel "would not show that she had ascertained that its audio track contains all or virtually all of a piece of music"). | *Disputed. The statement does not follow from the cited passage in the Second Circuit opinion, which among other things refers to a hypothetical channel such as "kitten videos" without any reference to employee moderation or "featured" channels, an issue not before the Second Circuit. 826 F.3d at 96. The statement also is contradicted by the evidence in the record. See Plaintiffs' SSUF ¶79 (not disputed by Vimeo): ("Vimeo Staff watch videos to determine which should be highlighted as 'Staff Picks.'"), SSUF ¶15 (not disputing statement by Dalas Verdugo, reading in part, "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community."); SSUF ¶81 (not disputed that Blake Whitman testified he went to the Staff Picks channel daily and reviewed new videos that had been added.); see also generally SSUF ¶¶ 71-78, 80, 82-88 (regarding Vimeo-moderated channels, including citations to Plaintiffs' Summary Chart [Berkley 2nd Supp. Decl. Exs. B-C] for videos added to these* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *channels, largely undisputed by Vimeo); Anten Declaration, Ex. 1-A (conceding that for all such videos added to channels, there is "Evidence that a Vimeo Employee Saw at Least Some of the Video.").* | |
| **41.** The fact that a Vimeo staff member is a moderator of a channel containing a Video-in-Suit does not necessarily mean that she watched all or part of the Video. Whitman Depo. at 47:10-48:12, 177:6-12. | *Disputed. The statement is not supported by the cited testimony, where Mr. Whitman among other things stated he daily reviewed all new content on the Staff Picks, HD, and "These are Videos" channels. See also Plaintiffs' SSUF ¶79 (not disputed by Vimeo): ("Vimeo Staff watch videos to determine which should be highlighted as 'Staff Picks.'"), SSUF ¶15 (not disputing statement by Dalas Verdugo, reading in part, "[W]hen you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community."); SSUF ¶81 (not disputed that Blake Whitman testified he went to the Staff Picks channel daily and reviewed new videos that had been added.). See also generally SSUF ¶¶ 71-78, 80, 82-88 (regarding Vimeo-moderated channels, including citations to Summary Chart [Berkley 2nd Supp. Decl. Exs. B-C] for videos added to these channels, largely undisputed by Vimeo); Anten Declaration, Ex. 1-A (conceding that for all such videos on Vimeo-moderated channels, there is "Evidence that a Vimeo Employee Saw at Least Some of the Video.").* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **42.** There is no evidence showing that each Vimeo staff member actually watched the entirety of every Video-in-Suit that she added to a channel. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C. | *Disputed. The statement is not supported by the materials cited, which consist only of Vimeo's so-called "Response Chart," Plaintiffs' Summary Chart, and Video Exhibits 1-306, disregarding Plaintiffs' other evidence. Plaintiffs' statement is also impermissibly ambiguous insofar as it does not clarify whether it is intended to refer to each Staff member and/or each Video separately, or whether it is seeks evidence supporting that collectively, each and every Staff member who added a video to an employee moderated channel watched the entirety of each and every such Video. Vimeo's Response Chart affirms there is evidence supporting that these videos were watched, and there is evidence supporting that videos added to employee-moderated channels (such as for example Vimeo Staff Picks and the Vimeo HD Channel) were watched in their entirety by these employees. See, e.g., Plaintiffs' SSUF ¶ 15 (Dalas Verdugo testimony that "when you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community"); SSUF ¶¶ 71-88 (facts regarding Vimeo-moderated channels, largely undisputed). Finally, the statement is irrelevant because in the vast* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *majority of cases the infringed music is played from the beginning of the video. See Berkley Suppl. Decl., Exs. B-C (Summary Chart) at Column Z; SSUF ¶ 135 (not disputed that in more than 250 instances, the infringing music commences within the first 10 seconds of the video, and that in 275 instances, it begins within the first 30 seconds).* | |
| **43.** There is no evidence showing that each Vimeo staff member that added a Video-in-Suit to a channel also ascertained that its audio track contained all or virtually all of a sound recording or musical composition for which Plaintiffs claim to own the copyright. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B; Frackman Supp. Decl., Ex. C. | *Disputed. The statement is not supported by the materials cited, which consist only of Vimeo's purported "Response Chart," Plaintiffs' Summary Chart, and Video Exhibits 1-306, disregarding Plaintiffs' other evidence. It is also irrelevant because whether "Plaintiffs claim to own the copyright," and whether Vimeo employees actually "ascertained" such knowledge, are not germane to the red-flag knowledge inquiry. Further, Plaintiffs' statement is also impermissibly ambiguous insofar as it does not clarify whether it is intended to refer to each Staff member and/or each added Video separately, or whether it is seeks evidence that collectively, each and every Staff member who added a video to an employee-moderated channel ascertained this for each and every added Video. Vimeo's Response Chart affirms there is evidence supporting that the videos were generally watched. To the extent intelligible, the assertion is disputed by evidence in the record regarding the nature of the Videos (including the Videos themselves) and the practices of Vimeo employees with respect to Vimeo Staff-moderated channels, including Vimeo Staff Picks and the Vimeo HD Channel. See Plaintiffs' SSUF ¶¶ 135-138 (regarding nature of duration of use in Videos); ¶ 15 (Verdugo testimony that "when you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten minute video to make sure it's something you want to promote to the community"); SSUF ¶¶ 71-88 (facts regarding Vimeo-moderated channels, nearly all undisputed).* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B; *see also Vimeo III*, 826 F.3d at 96.<br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **44.** The fact that a Vimeo staff member subscribes to a channel does not indicate that he or she has watched every video ever placed in that channel. Whitman Depo. at 42:15-43:4, 44:14-45:3 (out of the more than "a few hundred" videos that come to his inbox on a daily basis from subscribing to channels and people, he views "maybe 10 or 15" a day). | *Disputed. Defendants' statement is not supported by evidence cited, which only addresses Mr. Whitman's own viewing practices with respect to videos arriving in his "inbox," not his wider practices with respect to the channels to which he subscribed or the general practices of Vimeo employees, who presumably subscribed to channels for a reason.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B. |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| **45.** When a Vimeo staff member watches a video as a moderator of a channel, she does not necessarily watch it to determine if it violates Vimeo's Community Guidelines. Whitman Depo. at 51:6-9. | *Disputed. The testimony cited does not support the Defendants' statement. In the cited passage, Mr. Whitman testified only that it was not "an active" thing for him to "look for" videos that violated Vimeo's Community Guidelines, not that watching a video would not include determination of whether it violated Vimeo's guidelines. The statement also is irrelevant to the extent it focuses only on what Mr. Whitman or other Vimeo staff members would attempt to determine, not on what would be determinable by a reasonable person.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. |
| **46.** The channel "Lip Dub Stars" is a user-generated channel that was not moderated or co-moderated by a Vimeo staff member. Lodwick Depo. 207:6-11; Frackman Supp. Decl., Ex. O at EMI 1005-1006; Anten Supp. Decl. ¶ 6 & Ex. 5. | *Disputed. The cited evidence does not support that the "Lip Dub Stars" channel, which Vimeo admits was the subject of a Vimeo-orchestrated advertising campaign and was featured with the text "we like this channel," was a "user-generated channel," a term Defendants do not define. See Plaintiffs' SSUF ¶ 110 (not disputed, inter alia, that a "channel on the Vimeo Website titled 'Lip Dub Stars' was dedicated to showcasing lip dub videos" and that "a 'Channels' page on the Vimeo Website referred to "Lip Dub Stars" under the heading 'We like this channel,'"); SSUF ¶ 111 (not disputed that Vimeo placed text including "Sponsored by Carmex" and "Win $5,000 cash, Canon HD camcorders and Carmex lip balm!" on pages of the "Lip Dub Stars" channel featuring videos incorporating Plaintiffs' copyrighted works."); SSUF ¶ 117 (not disputed, inter alia, that Vimeo planned a promotion around the Lip Dub Stars channel).* | No genuine dispute:  As to the third sentence, Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A; *see also* Lodwick Depo. 207:6-11 ("I don't think that is or was a staff member.  I think it was a user."). |
| **D. Flagging** | | |
| **48.** Plaintiffs' Summary Chart indicates that, for Video No. 13, a notification was sent to Vimeo employees Dalas Verdugo and Julia Heffernan that the Video had been "flagged."  According to the notifica-tion, the Video was flagged by "Anony-mous tipster."  In the "Reason" field, the flagger did not provide any reason for why he or she flagged the video.  Berkley 2d Supp. Decl., Ex. B (column R); Frackman Supp. Decl., Ex. M at VCV025873 | *The first two sentences are not disputed other than to observe that Julia Heffernan (a/k/a Quinn's) inclusion on this notification was not specifically referenced in the Summary Chart.  The third sentence is disputed as unsupported insofar as the absence of information (or the word "undefined") beside the word "Reason" on the cited notification does not in itself imply that the flagger "did not provide any reason for why he or she flagged the video," nor is it supported that "Reason" is a "field."* | No genuine dispute:  As to the third sentence, Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. |
| **49.** Vimeo users may flag a video for any number of reasons having nothing to do with the presence of material that the | *Disputed. The notification in question states "Flagged clip: GymGlish – Lip Dub (Feel Good Inc. by Gorillaz)." Frackman Supp. Decl., Ex. M at VCV025873. A Vimeo employee, including Dalas Verdugo and Julia* | No genuine dispute:  Plaintiffs' response does not genuinely dispute |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| uploader did not have permission to upload.  Based on the notification alone, it would not be possible for a Vimeo employee to know why Video No. 13 was flagged.  Pile Supp. Decl., ¶ 6; Frackman Decl., Ex. 12 [Dkt. 93-11] (Ex. 91) (Reasons include: "Gameplay videos"; XXX-rated; "Not playing nice"; User did not make this"; and "Other reasons," where the user could explain the reason for flagging); Frackman Supp. Decl., Ex. M at VCV025873. | *Heffernan (a/k/a Quinn), could reasonably infer that Video No. 13 was flagged due to the uploader's use of the copyrighted recording by the Gorillaz.* | the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B. |
| **50.**  Nothing on the face of Video No. 13 or its corresponding webpage indicates that use of the song was not licensed, was unauthorized, or was not a fair use. Frackman Supp. Decl. Ex. B (No. 13), Ex. C (Ex. 13). | *Disputed. The description of Video No. 13 – titled "Lip Dub Cours Anglais GymGlish (Feel Good Inc. by Gorillaz)" – states in part, "A bunch of colleagues, a huge stereo, some hours to fill, a catchy song and a video camera..." As reflected in Plaintiffs' Summary Chart (Berkley 2nd Suppl. Decl. Exs. B-C), the Video uses three minutes and thirteen seconds of Plaintiffs' recording as the soundtrack for a "lip dub" video, starting at the beginning of the video.  These and other facts "on the face of" Video No. 13 and its corresponding web page indicate that use of the recording was not licensed, was not authorized, and was not a fair use. See also, e.g., Plaintiffs' original SUF ¶ 288 (not disputed by Vimeo, including use of phrase "infringing lip dub" with respect to analogous video); Plaintiffs' SSUF ¶ 168 (Vimeo in September 2013: "unauthorized use of a popular song in the background of your video" not fair use and among materials moderators will remove).* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs' citation to evidence not specific to Video No. 13 is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Video-in-Suit).<br><br>• Evidence that a Video-in-Suit contains music cannot give rise to an inference that the use was not licensed, was unauthorized, or was not fair.  *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98.<br><br>• Plaintiffs' speculation and argument cannot raise a factual dispute.  *See supra* Part B. |
| **51.**  There is no evidence that Dalas Verdugo or Julia Heffernan watched Video No. 13.  Berkley 2d Supp. Decl., Ex. B. | *Disputed. The evidence referenced in the Summary Chart (Berkley Suppl. Decl. Ex. B) includes that Dalas Verdugo (and also Julia Heffernan, a/k/a Quinn) received notification that Video No. 13 had been "flagged." As such, the video would have been reviewed for compliance with Vimeo's community guidelines and Terms of Service. See Plaintiffs' original SUF ¶¶ 133 (not disputed by Vimeo); Declaration of Andrew Pile (Docket No. 57), ¶ 26; Declaration of Michael Cheah (Docket No.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted.  *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence that Mr. Verdugo and Ms. Heffernan both |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | 55), ¶ 15; Verdugo Depo. (Frackman Decl. Ex. 5, Dkt. 89-1) at 34:12-21; 64:13-19 ("13 Q. Did you after you came to Vimeo, start to remove flagged clips? A. Yes. Q. How did you do that? A. By reviewing clips that were flagged and removing them if they were content we didn't want on the website.") | personally reviewed every video ever flagged, or that either specifically watched Video No. 13. *See supra* Part B (cannot rely on speculation). |
| **E. Burying** | | |
| **52.** The burying feature allows Vimeo staff to remove certain videos from showing up in Vimeo's "Discover" tab, which was previously a portion of Vimeo's website where a visitor might see random videos uploaded by users. The purpose of burying is to remove from Discover videos that are unlikely to appeal to a broad audience. The act of burying a video does not mean that the video violated any Terms of Service condition. A buried video remains otherwise accessible on the Vimeo website. Pile Supp. Decl. ¶¶ 2-3; Vimeo's 1st SSUF ¶ 20 (undisputed by Plaintiffs for the purposes of this motion). | *Disputed. Defendants do not dispute Vimeo's practice of reviewing and "burying" particular videos. However, the statement as made is not supported by the materials cited and is contradicted by the record. The so-called "Discover tab" was not a place to "see random videos uploaded by users." As Defendants' have admitted, the Discover Tab offers (or at all relevant times offered) "a selection of currently popular videos." Plaintiffs' SSUF 99 (not disputed by Vimeo, emphasis added). The cited materials also do not establish that the purpose of burying was to "remove…videos unlikely to appeal to a broad audience," and there is in fact evidence suggesting that burying may have been motivated by the specific music used in videos – for example, the 27 "buried" Videos at issue using recordings by the Beatles. See Summary Chart at Columns E, Q. Plaintiffs do not dispute that burying prevented Videos from continuing to appear in the "Discover" tab, and that "buried" videos remained available on the Vimeo website.* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs cite no evidence, but only speculation, that the burying of any Video-in-Suit was motivated by the music used. *See supra* Part B. |
| **53.** The fact that a video has been buried does not necessarily mean that Vimeo staff has ever watched all or even part of the video. Supp. Pile Decl., ¶ 2; Whitman Depo. at 106:14-19 (no guidelines on burying). | *Disputed. Defendants admit there is evidence that each buried video among the Videos at issue was watched in its entirety or at least in part. See Anten Suppl. Decl. Exs. 1, 1-A at Column D; Defendants' August 16, 2017 memorandum at 2; Berkley 2nd Suppl. Decl., ¶¶ 10-12 and Exs. B-C (Summary Chart), G-H (identifying buried videos).* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. |
| **54.** The fact that a video has been buried does not mean that Vimeo staff has made a determination as to whether the video is potentially infringing. Supp. Pile Decl., ¶¶ 3-4. | *Disputed. Defendants admit there is evidence that each buried video among the Videos at issue was watched in its entirety or at least in part, and the statement is impermissibly vague and ambiguous as to what is meant by or would constitute a "determination as to whether the video is potentially infringing." See Anten Suppl. Decl. Exs. 1, 1-A at Column D; Defendants' August 16, 2017 memorandum at 2; Berkley 2nd Suppl. Decl., ¶¶ 10-12 and Exs. B-C (Summary Chart), G-H (identifying buried videos). In nearly all cases the specific music used was identified, and the music generally began at the beginning of the video and continued* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br>• Plaintiffs' speculation and argument cannot raise a factual dispute. *See supra* Part B.<br>• Evidence that a video contains music cannot give rise to an inference that a |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *for a substantial duration, typically throughout the entire video. Plaintiffs' SUF ¶¶ 135-138. Defendants admit that Vimeo's moderation tools are used to identify and remove videos that violate Vimeo's Terms of Service, which purportedly disallow copyright infringement. See Cheah Declaration (Dkt. 55) at ¶ 15. The statement also is irrelevant to the extent it focuses only on whether "Vimeo Staff" would make such a determination, not on what would be determined by a reasonable person.* | determination of potential infringement was made. *See supra* Part C; *Vimeo III*, 826 F.3d at 96-98. |
| **55.** For at least 130 Videos-in-Suit, Plaintiffs assert no interaction with the Video by any Vimeo employee other than an act of burying.[FN7] Berkley 2d Supp. Decl., Ex. B.<br><br>[FN7] *See Video Nos. 22, 22, 26, 32, 38, 52-54, 60-64, 68, 67, 71, 75, 76, 78, 80, 91, 92, 97, 98, 100, 104-107, 109, 110, 112, 116, 117, 120, 124-126, 128, 130-133, 141, 147-150, 153-155, 160-164, 167-169, 172-174, 177, 181, 185-187, 202, 203, 208, 209, 211, 217-219, 222-224, 226-228, 230, 234, 235, 237, 239-243, 246, 248, 253-257, 260-264, 266, 269-272, 275, 279, 281, 283, 285-290, 292-301, 304-306.* | *Disputed. It is reasonable to conclude or at least inferable from the evidence that the "currently popular videos" featured in Vimeo's Discover Tab that Vimeo ultimately buried were also interacted with beyond a single "act of burying." Plaintiffs' SSUF ¶ 99 (not disputed); ¶¶ 2, 3, 16 (Vimeo employees regularly watched videos and were instructed to watch videos); see also Plaintiffs' Original SUF ¶¶ 109 (not disputed that members of the Community Team spent several hours a day on the website, that one Vimeo employee watched videos for as much as 15 hours a week, and that as of April 2009, Blake Whitman had watched at least 50,000 videos, a large majority on Vimeo). Defendants' statement also includes Videos that were simultaneously "buried" and whitelisted at the account level, and the combination of these factors further supports an inference of additional interactions. In any event, the statement is irrelevant, including because none of the referenced videos reflect on their face that the uploader held any authorization or license to use Plaintiffs' music, the overwhelming majority include clear "credits" identifying the music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138, Summary Chart (rows for referenced videos).* | <u>No genuine dispute:</u> Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence, but only speculation, that any Vimeo employee interacted with the identified Videos other than an act of burying. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **56.** There is no evidence that Vimeo staff made determinations about potential infringement with respect to the music in any of the buried Videos-in-Suit. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B | *Disputed. The statement is not supported by the cited materials, and is in fact contradicted by them and by other evidence in the record. It additionally is impermissibly vague and ambiguous as to what is meant by or would constitute a "determination about potential infringement." Defendants admit that there is evidence that each buried video was watched in its entirety or at least in part. See Anten Suppl. Decl. Exs. 1 & 1A at Column D. Defendants also admit that Vimeo's moderation tools are used to identify and remove videos that violate Vimeo's Terms of Service, which purportedly disallow copyright infringement. See Cheah Declaration (Dkt. 55) at ¶ 15. Other statements in Vimeo's cited "Response Chart," beyond drawing selectively from Plaintiffs' Summary Chart, consist merely of unsupported assertions and legal arguments* | <u>No genuine dispute:</u> Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence other than speculation that any Vimeo staff made determinations about potential infringement with respect to the music in the referenced Videos. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| | *that are not inadmissible evidence and that ignore Plaintiffs' evidence, which is not limited to the Summary Chart alone. Defendants' statement also is irrelevant to the extent it focuses only on whether "Vimeo Staff" actually made "determinations of potential infringement," not whether a reasonable person would have done so. The facts of the Videos support that a "determination" of apparent infringement was made, or by a reasonable person would have been made, including because none of the referenced videos reflect on their face any authorization or license held by the uploader to use Plaintiffs' Works, the overwhelming majority include clear "credits" identifying the specific music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138; Summary Chart (rows for buried videos).* | irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Vimeo's statement is not argument, but rather an undisputed factual statement about the absence of record evidence. *See Gallo*, 22 F.3d at 1223-24. |
| **F. Whitelisting** | | |
| **57.** The whitelisting function allows Vimeo to disable the flagging function so that users cannot "flag" the video as violating Vimeo's Terms of Service. The purpose of this is to prevent the need to review a video again. Declaration of Andrew Pile ¶¶ 25-26 [Dkt. 57] (discussing flagging).) Supp. Pile Decl., ¶ 5; Vimeo's 1st SSUF ¶ 24 (undisputed by Plaintiffs for the purposes of this motion). | *The first sentence is not disputed. The second sentence is disputed as unsupported by the testimony of Mr. Pile and as conclusory, lacking foundation, and disputed by admissible evidence to the extent it suggests the unique "purpose" of whitelisting relates only to flagged videos. See, e.g, SSUF ¶ 91(not disputed by Vimeo that Andrea Allen testified whitelisted videos indicated "a moderator has looked at this already," and that the video can be ignored since it's "okay"). Plaintiffs do not dispute the assertion to the extent it affirms Vimeo moderators reviewed each of the whitelisted Videos.* | No genuine dispute:  Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Mr. Pile's testimony was based on his personal knowledge. Supp. Pile Decl., ¶ 1.<br><br>• There is no testimony that Vimeo moderators reviewed each of the whitelisted Videos. Supp. Pile Decl. ¶ 7; *Vimeo II*, 972 F. Supp. 2d at 544-45. |
| **58.** The fact that a video has been whitelisted does not necessarily mean that Vimeo staff has ever watched all or even part of the video. Supp. Pile Decl., ¶ 7 ("Even when individual videos are whitelisted, Vimeo staff may make the decision to whitelist based upon the nature of the account that uploaded the video and/or its associated thumbnail image. As a result, the fact that a video has been whitelisted does not necessarily mean that Vimeo staff watched all or part of it."); | *Disputed. The cited statements of Mr. Pile and Mr. Verdugo are conclusory, speculative, and are contradicted by Defendants' admissions and other evidence. See Anten Suppl. Decl. Exs. 1 & 1-A at Column D (conceding that for 306 of 307 videos –including those that were whitelisted – there is "Evidence that a Vimeo Employee Saw at Least Some of the Video."); Defendants' August 16, 2017 memorandum at 2 (whether "a Vimeo employee watched all or part of the Video" a point "never really in dispute for purposes of this motion"); Verdugo Depo. at 234:8-11 (Anten Suppl. Decl. Ex. 13) ("usual practice" is to review videos before whitelisting); Plaintiffs' SSUF ¶ 15 (not disputed Mr. Dalas Verdugo stated, in part, "when you watch a video, you have to watch it in real-time, which means it takes ten minutes to watch a ten* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• The Court already determined that the fact a video has been whitelisted does not necessarily mean Vimeo staff actually watched all or part of it. *Vimeo II*, 972 F. Supp. 2d at 544-45. |

**Exhibit B**

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| Verdugo Depo. at 233:25-234:7 ("likely" whitelisted videos "without looking at the video itself"). | *minute video to make sure it's something you want to promote to the community.") See also SSUF ¶ 94 (citing Berkley 2nd Suppl. Decl., Exs. D, G-H regarding whitelisted videos, not disputed by Vimeo); Summary Chart (identifying whitelisted videos, column P).* | |
| **59.** Whitelisting has no effect on users' ability to search for or access a whitelisted video. Supp. Pile Decl., ¶ 8. | *Disputed. A whitelisted video can no longer be flagged by users and will thus not be re-reviewed (and can be "ignored") by moderators. This guarantees that it will remain available on the Vimeo website, unlike videos that have not been whitelisted. See, e.g., Plaintiffs' SSUF 90-92; Suppl. Pile Decl. ¶ 5 (whitelisting "allows Vimeo to disable the flagging function so that users cannot 'flag' a whitelisted video as violating Vimeo's Terms of Service"); see supra, ¶ 57.* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Whitelisting a video does not "guarantee[] that it will remain available" on Vimeo, as it can still be removed by the uploader or Vimeo, including pursuant to the DMCA. *See* Plaintiffs' Response to Vimeo's 2d SSUF ¶ 61 (undisputed). |
| **60.** A whitelisted video may be removed from the website at any time in response to a DMCA takedown notice alleging infringement or an email to Vimeo's Community Team alleging some other impropriety. Supp. Pile Decl., ¶ 8; Cheah Decl. ¶ 10. | *Disputed. The declaration paragraphs are not admissible evidence supporting that a whitelisted video "may be removed from the website at any time" for the given reasons, as they consist only of a quotation of Vimeo's purported DMCA policy (Cheah) and of conclusory assertions that in any event do not address the contention (Pile). Defendants' statement also is unclear as to the sense it which it intends "may."* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Mr. Pile's testimony was based on his personal knowledge. Supp. Pile Decl., ¶ 1. |
| **62.** In response to Plaintiffs' initial and amended complaints, Videos that had been whitelisted were removed through Vimeo's standard DMCA notice-and-takedown procedures. Cheah Decl., ¶¶ 47, 50. | *Disputed. As acknowledged in Defendants' statement, the videos were removed in connection with Plaintiffs' initial and Amended Complaints, and the schedules thereto, not notices pursuant to the Digital Millennium Copyright Act. This contradicts any such assertion in the Cheah Declaration, which also predates Plaintiffs' Amended Complaints by more than one year. See Dkt. 141; Case No. 09-cv-10105, Dkt. 139.* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Mr. Cheah stated that Vimeo removed over 1,000 videos identified in Plaintiffs' proposed amended complaints. Cheah Decl., ¶ 50. |
| **64.** For at least 29 Videos-in-Suit, Plaintiffs assert no interaction with the Video by any Vimeo employee other than an act of whitelisting.[FN8] Berkley 2d Supp. Decl., Ex. B. | *Disputed. The "whitelisting" function is related to users' "flagging" of videos and to Vimeo moderators' review of flagged videos. Plaintiffs' SSUF ¶¶ 90, 93; Suppl. Pile Decl. at ¶5 (whitelisting "allows Vimeo to disable the flagging function so that users cannot "flag" a whitelisted video as violating Vimeo's Terms of Service"). It is inferable that whitelisted videos were also interacted with in the context of being* | <u>No genuine dispute</u>: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition: |

Exhibit B

| VIMEO'S UNDISPUTED FACT | PLAINTIFFS' RESPONSE | VIMEO'S REPLY |
|---|---|---|
| *FN8 Video Nos. 29, 30, 79, 81, 83, 87, 103, 137, 142, 144, 151, 152, 157, 171, 180, 182, 184, 191, 193, 196, 210, 221, 247, 251, 258, 265, 274, 276, 302.* | *flagged (at least once if not multiple times before they were whitelisted), and were also interacted with in others ways, including by being viewed and reviewed by Vimeo employees. Plaintiffs' SSUF ¶¶ 2, 3, 16 (employees regularly watched videos and were instructed to watch videos); Plaintiffs' Original SUF ¶¶ 109 (members of the Community Team spent several hours a day on the website, that one Vimeo employee watched videos for as much as 15 hours a week, and that as of April 2009, Blake Whitman had watched at least 50,000 videos, a large majority on Vimeo). In any event, the assertion is irrelevant, including because none of the referenced videos reflect on their face the existence of any authorization or license held by the uploader, the overwhelming majority include clear "credits" identifying the music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138, Summary Chart (rows for referenced videos).* | • Plaintiffs cite no evidence, but only speculation, that any Vimeo employee interacted with the identified Videos other than an act of whitelisting. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit). |
| **65.** There is no evidence that Vimeo staff made determinations about potential infringement with respect to the music in any of the whitelisted Videos-in-Suit. Anten Supp. Decl., Exs. 1 & 1-A (Vimeo Response Chart); Berkley 2d Supp. Decl., Ex. B. | *Disputed. The statement is not supported by the cited materials, and is contradicted by them and by other evidence in the record. It additionally is impermissibly vague and ambiguous as to what is meant by or would constitute a "determination about potential infringement." Defendants admit that there is evidence that each buried video was watched in its entirety or at least in part. Anten Suppl. Decl. Exs. 1 & 1A at Column D. Defendants also admit that Vimeo's moderation tools are used to identify and remove videos that violate Vimeo's Terms of Service, which purport-edly disallow copyright infringement. See Cheah Declaration (Dkt. 55) at ¶ 15. Other statements in Vimeo's cited "Response Chart," beyond selectively drawing from Plaintiffs' Summary Chart, consist merely of unsupported assertions and legal argument that are not inadmissible evidence and that ignore Plaintiffs' evidence, which is not limited to the Summary Chart alone. Defendants' statement also is irrelevant to the extent it focuses only on whether "Vimeo Staff" actually made "determinations of potential infringement," not whether a reasonable person would have done so. Finally, the evidence of the Videos supports that "determinations" of apparent infringement were (or by a reasonable person would have been) made, since none of whitelisted videos reflect any authorization or license held by the uploader, the overwhelming majority include clear "credits" identifying the music used, and the music is used prominently throughout the video. See SSUF ¶¶ 70-71, 135-138, Summary Chart (rows for referenced videos).* | No genuine dispute: Plaintiffs' response does not genuinely dispute the fact as asserted. *See supra* Part A. In addition:<br><br>• Plaintiffs cite no evidence other than speculation that any Vimeo staff made determinations with respect to the music in the referenced Videos. *See supra* Part B.<br><br>• Plaintiffs' citation to evidence not specific to the Videos-in-Suit is irrelevant. *See supra* Part C; *Vimeo III*, 826 F.3d at 99 (evidence must be specific to Videos-in-Suit).<br><br>• Vimeo's statement is not argument, but rather an undisputed factual statement about the absence of record evidence. *See Gallo*, 22 F.3d at 1223-24. |