UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAPITOL RECORDS, LLC, *et al.*, | Case No. 09-cv-10101 (RA) |
| Plaintiffs, | |
| v. | |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |
| EMI BLACKWOOD MUSIC, INC., *et al.*, | Case No. 09-cv-10105(RA) |
| Plaintiffs, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF VIMEO'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| VIMEO, LLC d/b/a VIMEO.COM, *et al.*, | |
| Defendants. | |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 3

A.  How Vimeo Works .......................................................................... 3

B.  Vimeo's Compliance With The DMCA Threshold Requirements ...................... 4

C.  Plaintiffs' 2009 Lawsuit.................................................................. 4

    1.  Stage I: The First Summary Judgment Order And The Interlocutory Appeal.......... 5

    2.  Stage II: The Remand Summary Judgment Order And Plaintiffs' Appeal.............. 7

LEGAL STANDARD ................................................................................. 7

ARGUMENT ........................................................................................ 10

I.  THE COURT SHOULD AWARD VIMEO, AS THE PREVAILING, ITS
    REASONABLE ATTORNEYS' FEES BASED ON THE TOTALITY OF
    CIRCUMSTANCES OF THE CASE ................................................. 10

    A.  Vimeo Is The Prevailing Party...................................................... 10

    B.  Plaintiffs' Claims Were Improperly Motivated ................................... 11

    C.  Plaintiffs' Claims And Conduct Were Objectively Unreasonable .................. 14

        1.  Plaintiffs' Conduct Through Stage I Was Objectively Unreasonable ....... 14

        2.  Plaintiffs' Conduct In Stage II Was Objectively Unreasonable................. 16

    D.  A Fee Award Is Necessary To Compensate Vimeo And Deter Plaintiffs ............ 19

    E.  The Court Should Award Vimeo Its Fees For Preparing This Motion .................. 22

II. VIMEO'S REQUESTED ATTORNEYS' FEES, AND QUINN EMANUEL'S
    HOURS EXPENDED ON THIS CASE, ARE REASONABLE AND
    APPROPRIATE ........................................................................ 22

    A.  Vimeo's Requested Attorneys' Fees Are Reasonable And Appropriate .............. 22

    B.  The Court Should Award Vimeo The Full Lodestar Amount ................................ 26

III. THE COURT SHOULD AWARD VIMEO ITS REQUESTED COSTS THAT THE
     SECOND CIRCUIT REFERRED TO THE DISTRICT COURT ................................... 27

CONCLUSION....................................................................................... 27

CERTIFICATE OF COMPLIANCE ........................................................... 28

**Cases**

*Arclightz & Films Pvt. Ltd. v. Video Palace Inc.,*
    303 F. Supp. 2d 356 (S.D.N.Y. 2003)..................................................7

*Baker v. Urban Outfitters, Inc.,*
    431 F. Supp. 2d 351 (S.D.N.Y. 2006)............................................12, 13

*Barclays Capital Inc. v. Theflyonthewall.com,*
    2010 WL 2640095 (S.D.N.Y. June 30, 2010)..................................25

*Berg v. M&F W. Prods., Inc.,*
    2021 WL 2646223 (E.D. Tex. June 28, 2021)................................10

*Bernal v. Paradigm Talent & Literary Agency,*
    2010 WL 6397561 (C.D. Cal. June 1, 2010)..................................21

*Blattman v. Siebel,*
    No. 15-cv-530 (CFC), ECF No. 434 (D. Del. Dec. 6, 2021)..........24

*Bliven v. Hunt,*
    579 F.3d 204 (2d Cir. 2009).............................................................25

*Brunswick Recs. Corp. v. Lastrada Ent. Co.,*
    2023 WL 8703705 (S.D.N.Y. Dec. 15, 2023)..............................24

*Capitol Records, LLC v. Vimeo, LLC,*
    972 F. Supp. 2d 500 (S.D.N.Y. 2013) (*Vimeo I*)............2, 4, 5, 6, 15
    972 F. Supp. 2d 537 (S.D.N.Y. 2013) (*Vimeo II*)............................6
    826 F.3d 78 (2d Cir. 2016) (*Vimeo III*)............2, 5, 6, 7, 11, 12, 15, 16, 18
    2021 WL 2181252 (S.D.N.Y. May 28, 2021) (*Vimeo IV*)............4, 5, 7, 18
    125 F.4th 409 (2d Cir. 2025) (*Vimeo V*)............................3, 4, 7, 19
    151 F.4th 13 (2d Cir. 2025)..............................................................7

*Clark v. Castor and Pollux Ltd. Liability Co.,*
    2019 WL 4467117 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 18, 2019)..........24

*Clay v. Cameron,*
    2012 WL 13008431 (S.D. Fla. Sept. 5, 2012)..................................8, 10

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.,*
    546 F. Supp. 2d 120 (S.D.N.Y. 2008)..............................16, 18, 19

*Figure Eight Holdings, LLC v. Dr. Jay's, Inc.,*
    2011 WL 5839655 (C.D. Cal. Nov. 18, 2011)..................................20

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ......................................................... 3, 8, 9, 13, 20

*Grant v. Martinez*,
973 F.2d 96 (2d Cir. 1992) ................................................................ 24

*Harner v. Wong Corp.*,
2015 WL 11111300 (D.N.M. June 4, 2015) .......................................... 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................... 23, 26

*Hughes v. Benjamin*,
2020 WL 4500181 (S.D.N.Y. Aug. 5, 2020) ................ 8, 9, 11, 12, 13, 22, 23

*Johnson v. Storix, Inc.*,
716 F. App'x 628 (9th Cir. 2017) ......................................................... 8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) ....................................................... 1, 8, 9, 13, 14

*Korman v. Iglesias*,
2018 WL 6978693 (S.D. Fla. Dec. 6, 2018) ........................................... 8

*Luken v. Int'l Yacht Council, Ltd.*,
581 F. Supp. 2d 1226 (S.D. Fla. 2008) ................................................ 19

*Matthew Bender & Co. v. W. Pub. Co.*,
240 F.3d 116 (2d Cir. 2001) ........................................................... 9, 22

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
873 F.3d 1045 (9th Cir. 2017) ......................................................... 12

*Millea v. Metro-North R.R. Co.*,
658 F.3d 154 (2d Cir. 2011) .......................................................... 23, 26

*MPAY Inc. v. Erie Custom Computer Apps., Inc.*,
2022 WL 17829712 (D. Minn. Dec. 21, 2022) ...................................... 18

*Perdue v. Kenny A. ex rel. Winn*,
559 U.S. 542 (2010) ...................................................................... 26

*Pig Newton, Inc. v. Bds. of Dirs. of The Motion Picture Indus. Pension Plan*,
2016 WL 796840 (S.D.N.Y. Feb. 24, 2016) .......................................... 22

*Proofpoint, Inc. v. Vade Secure, Inc.*,
2020 WL 7398791 (N.D. Cal. Dec. 17, 2020) ....................................... 23

*Pyatt v. Raymond*,
2012 WL 1668248 (S.D.N.Y. May 10, 2012) .................................................... 9, 14, 15

*Reiter v. Metro. Transp. Auth. of N.Y.*,
457 F.3d 224 (2d Cir. 2006) ....................................................................... 23

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527 (S.D.N.Y. 2008) ............................................................ 23

*Rudi v. Wexner*,
2022 WL 1682297 (S.D. Ohio May 16, 2022) .................................................. 24

*Sandy v. Paramount Pictures Corp.*,
2025 WL 659214 (C.D. Cal. Feb. 14, 2025) ...................................................... 8

*Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*,
2018 WL 2976009 (S.D.N.Y. June 13, 2018) .................................................... 8

*Shangold v. Walt Disney Co.*,
275 Fed. Appx. 72 (2d Cir. 2008) ................................................................ 21

*Simmons v. N.Y.C. Transit Auth.*,
575 F.3d 170 (2d Cir. 2009) ....................................................................... 23

*Small Just. LLC v. Xcentric Ventures LLC*,
873 F.3d 313 (1st Cir. 2017) ...................................................................... 20

*TCA Television Corp. v. McCollum*,
2017 WL 2418751 (S.D.N.Y. June 5, 2017) .................................................... 25

*Torah Soft Ltd. v. Drosnin*,
2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) .................................................. 13

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*,
953 F.3d 638 (9th Cir. 2020) ....................................................................... 8

*Viacom Int'l, Inc. v. YouTube, Inc.*,
676 F.3d 19 (2d Cir. 2012) .......................................................................... 4

*Walsh v. Townsquare Media, Inc.*,
2022 WL 1302216 (S.D.N.Y. May 2, 2022) ...................................... 8, 9, 10, 19, 21

*Webber v. Dash*,
2022 WL 2751874 (S.D.N.Y. July 14, 2022) ................................................... 23

## Statutes

15 U.S.C. §1117 ................................................................................................................. 8

17 U.S.C. §505 ........................................................................................................... 1, 7, 8, 9

17 U.S.C. §512 ................................................................................................................. 4

17 U.S.C. §512(c) ...................................................................................................... 1, 5, 11

17 U.S.C. §512(g) ............................................................................................................. 1

17 U.S.C. §512(i) ............................................................................................................. 4

17 U.S.C. §512(k) ............................................................................................................. 4

17 U.S.C. §512(m) .................................................................................................. 3, 11, 12, 15

35 U.S.C. §285 ................................................................................................................. 8

Vimeo, Inc. and Connected Ventures, LLC (collectively "Vimeo") respectfully submit this memorandum of law in support of Vimeo's motion pursuant to 17 U.S.C. §505 and Fed. R. Civ. P. 54 for an order granting Vimeo its attorneys' fees and costs.

## PRELIMINARY STATEMENT

The Copyright Act's fee-shifting language grants this Court discretion to award reasonable attorneys' fees to the "prevailing party." 17 U.S.C. §505. Courts in copyright cases thus have "wide latitude to award attorney's fees based on the totality of circumstances in a case." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 203 (2016). This case—where Vimeo spent **sixteen years** defending itself against Plaintiffs' claims, where Plaintiffs sought to use this Court as a vehicle to sidestep Congress's DMCA notice-and-takedown regime (which Plaintiffs could have used to secure fast removal of every video at issue), and where Vimeo prevailed on **every one** of the 1,675 asserted videos—presents the exact circumstances that warrant an award of attorneys' fees. Given the particular circumstances of this case and the reasonableness of Vimeo's requested fees, the Court should grant this motion in full.

In 2009, Plaintiffs filed their initial Complaint[1] against Vimeo, alleging claims of copyright infringement, misappropriation and unfair competition primarily based on videos Vimeo users uploaded that incorporated Plaintiffs' music compositions and/or sound recordings. This filing was a surprise to Vimeo because Plaintiffs made zero effort to first avail themselves of the DMCA's notice-and-takedown procedure, which would have obligated Vimeo to expeditiously remove or disable access to those videos to retain DMCA safe harbor for those videos. *See* 17 U.S.C. §§512(c), (g). And Plaintiffs knew this: They sent takedown notices to Vimeo, before and after

---

[1]    This case consists of two consolidated actions: (1) No. 09-cv-10101 (S.D.N.Y.) and (2) No. 09-cv-10105 (S.D.N.Y.). As the arguments herein pertain to both actions, for simplicity this motion refers to these cases in the singular. All citations to the docket refer to No. 09-cv-10101 unless otherwise noted. All internal quotation marks are omitted and emphases are added unless otherwise noted.

filing this lawsuit, identifying over 170 videos, which Vimeo expeditiously removed. *See Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 535-36 (S.D.N.Y. 2013) ("*Vimeo I*"). But through this lawsuit, Plaintiffs sought an end-run that Congressional regime, seeking to hold Vimeo liable for over 1,600 user-generated videos, most of which Vimeo was not aware were on its platform.

Sixteen years later, Vimeo has prevailed on all of Plaintiffs' claims, including through two trips to the Second Circuit. Plaintiffs' true motivation for initiating this suit—an attempt to judicially rewrite the DMCA to relieve Plaintiffs of the supposed inconvenience of sending DMCA notices—has been soundly rebuffed. At every stage, Plaintiffs refused to back down, even after the Second Circuit warned that "Vimeo [was] entitled to summary judgment" unless Plaintiffs could present evidence that "Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious to an ordinary person who had no specialized knowledge of music or the laws of copyright." *Capitol Recs., LLC, v. Vimeo, LLC* ("*Vimeo III*"), 826 F.3d 78, 98 (2d Cir. 2016). Rather than present *any* proof of such knowledge, Plaintiffs besieged the Court with massive filings of irrelevant evidence, forcing Vimeo to incur over $800,000 in attorneys' fees on remand alone. And unlike Plaintiffs—who threatened Vimeo with statutory damages in excess of $250 million—Vimeo had no prospect of securing a damages award, despite its total victory. Given these circumstances, the Court should exercise its "wide latitude" to grant Vimeo's motion for its reasonable attorneys' fees.

***First***, Plaintiffs' lawsuit was largely motivated by their attempt to create an alternative copyright regime where rightsholders no longer need to send DMCA notices and instead claim that the mere appearance of copyrighted works on a platform is enough to force a costly trial. Plaintiffs thus took a strategic gamble by *not* sending Vimeo DMCA notices (as they had done in the past), hoping to send a message to the industry to self-police users' posts—the opposite of what

17 U.S.C. §512(m) affords. Moreover, Plaintiffs litigated this case unreasonably, repeatedly over-litigating basic issues and forwarding unreasonable positions (most egregiously on remand, where Plaintiffs presented zero evidence of what the Second Circuit expressly dictated was necessary for Plaintiffs to overcome a finding of summary judgment for Vimeo). In any event, this Court has latitude to award Vimeo's fees as the prevailing party because Vimeo's victory furthers the goals and policies underlying the Copyright Act. *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright"). Here, Vimeo not only defended itself, but spared other online platforms from the prospect of no longer being able to rely on the DMCA's notice-and-takedown regime.

**Second**, Vimeo's attorneys' fees are reasonable. With this motion, Vimeo submits a declaration and invoices detailing the reasonable rates of Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") and the attorney hours expended defending this action. Vimeo seeks $5,974,520.87 in fees—an amount **below** the fees actually expended. This amount not only is reasonable given the issues and Plaintiffs' conduct, but is significantly **lower** than what would be expected for the defense of such a lawsuit that extended for such a long time.

**BACKGROUND**

A.     **Vimeo Hosts User-Generated Videos**

Vimeo operates an online video-hosting and video-sharing website that was created in 2004. *Capitol Recs., LLC v. Vimeo, Inc.*, 125 F.4th 409, 414 (2d Cir. 2025) ("*Vimeo V*"). By 2012, Vimeo had 12.3 million registered users posting 43,000 videos every day. *Id.* When users register a Vimeo account, they must agree to Vimeo's Terms of Service, which includes an agreement that the user will not upload videos that infringe another's rights. *Id.* at 416.

Vimeo had a "Community Team" who would occasionally watch or "interact" with videos, including videos that contained music. *Id.* For example, Vimeo employees may have "liked" a video, commented on a video, placed a video in a channel, "tagged" a video with music credits, or "whitelisted" or "buried" a video. *See id.*; *Capitol Recs., LLC v. Vimeo, LLC*, 2021 WL 2181252, *7 (S.D.N.Y. May 28, 2021) ("*Vimeo IV*"). Such "interactions," however, were sparse—as the Second Circuit noted, "when one recognizes the huge number of videos posted by users on Vimeo, Plaintiffs have failed to show that interventions by Vimeo staff affected more than a tiny percentage." *Vimeo V*, 125 F.4th at 425.

## B. Vimeo's Compliance With The DMCA Threshold Requirements

Title II of the Digital Millennium Copyright Act, 17 U.S.C. §512, "establish[es] a series of four 'safe harbors' that allow qualifying service providers to limit their liability for claims of copyright infringement." *Vimeo I*, 972 F. Supp. 2d at 509 (quoting *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012)). "[A] finding of safe harbor application necessarily protects a defendant from all affirmative claims for monetary relief." *Id.* (quoting *Viacom*, 676 F.3d at 41).

"To qualify for protection under any of the safe harbors, a party must first establish that it meets three threshold criteria." *Id.* at 509-10. As the Court determined on summary judgment, none of which Plaintiffs appealed:

- "Vimeo qualifies as a service provider under §512(k)(1)(B)," *id.* at 511-12;

- Vimeo designated a DMCA agent with the Copyright Office, *id.* at 510 n.10, and "has established each prong of the repeat infringer policy requirement," *id.* at 511-17; and

- Vimeo does not interfere with "'standard technical measures' as defined by §512(i)(2)," *id.* at 517.

## C. Plaintiffs' 2009 Lawsuit

Plaintiffs are record and music publishing companies that brought this lawsuit in 2009, alleging that 199 videos uploaded to Vimeo by users included music compositions and/or sound

recordings for which Plaintiffs owned the copyrights, and seeking to impose liability on Vimeo for, among other things, direct, contributory and vicarious copyright infringement. *Vimeo III*, 826 F.3d at 86; *Vimeo IV*, 2021 WL 2181252, *1; *Vimeo I*, 972 F. Supp. 2d at 506-07.

But in December 2008, a full year *before* Plaintiffs filed this lawsuit, "Vimeo received a letter from EMI identifying approximately 170 videos on the Website that infringed EMI's copyrights." *Vimeo I*, 972 F. Supp. 2d at 535-36. Vimeo removed those videos. *Id.* at 536. In June 2010 and July 2012—*after* this lawsuit was filed—EMI again sent Vimeo takedown notices, with which Vimeo complied. *Id.* But "Plaintiffs *did not* send takedown notices regarding the videos involved in this suit." *Vimeo III*, 826 F.3d at 85. Although not obligated to do so, Vimeo expeditiously removed the 199 videos in the Complaint. *Vimeo I*, 972 F. Supp. 2d at 536.

### 1. Stage I: The First Summary Judgment Order And The Interlocutory Appeal

The parties agreed to bifurcate discovery, such that it first would be limited to "DMCA-related issues," followed by summary judgment motions, with "remaining issues" addressed if necessary after the Court's ruling. Dkt. 24 ¶5. Following DMCA fact and expert discovery, the parties cross-moved for summary judgment on Vimeo's DMCA safe-harbor defense.

In September 2013, the Court issued its summary judgment order. The Court ruled that the videos at issue were "stor[ed] at the direction of a user" under §512(c)(1), *Vimeo I*, 972 F. Supp. 2d at 519,[2] and that "Vimeo's removal of the videos identified in the takedown notices satisfies §512(c)(1)(C)," *id.* at 536. The Court granted Vimeo summary judgment on all videos for which Plaintiffs provided no evidence Vimeo employees had ever "interacted" with the video and which

---

[2]     The Court carved out videos uploaded by users who "were at the time, or later became, Vimeo employees," finding that a "triable issue has been raised with respect to whether" those videos could be characterized as stored at the direction of a user. *Vimeo I*, 972 F. Supp. 2d at 518-19. However, Plaintiffs subsequently stipulated to voluntarily dismiss with prejudice all claims arising from "employee-uploaded videos." *See* Dkt. 235 at ¶¶1, 4(a).

did not incorporate a pre-1972 sound recording. *Id.* at 537. However, the Court also ruled that: (1) a triable issue existed on whether Vimeo had red-flag knowledge for videos that a Vimeo employee had "interacted" with, *id.* at 523; and (2) DMCA safe harbors did not apply to pre-1972 sound recordings, *id.* at 536-37.

In December 2013, the Court granted reconsideration as to whether Vimeo had interacted with certain videos, finding that Vimeo did not have red-flag knowledge of 17 additional videos. *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 549, 556 (S.D.N.Y. 2013) ("*Vimeo II*"). Thus, the Court ruled that: (1) Vimeo was entitled to summary judgment for 153 of the 199 asserted videos (77%); (2) triable issues on Vimeo's red-flag knowledge existed as to 18 videos; and (3) Plaintiffs were entitled to summary judgment for 20 videos containing pre-1972 sound recordings. *Id.* at 542-43, 549.[3] The Court also: (1) granted Plaintiffs' motion to amend the complaint, adding another *1,476* videos to the lawsuit; and (2) granted Vimeo's motion to certify the Order for interlocutory appeal. *Id.* at 549-50, 556.

In June 2016, the Second Circuit vacated both of this Court's challenged rulings. First, it vacated the "grant of summary judgment to Plaintiffs as to the availability of the DMCA safe harbor to Vimeo in relation to liability for infringement of pre-1972 sound recordings." *Vimeo III*, 826 F.3d at 87-93. Second, it held that a Vimeo employee's mere awareness that a video contains copyrighted music was not enough to create a triable issue on red-flag knowledge of "obvious" infringement because such use could be a fair use or authorized:

> [A] showing by plaintiffs of no more than that some employee of Vimeo had some contact with a user-posted video that played all, or nearly all, of a recognizable song is not sufficient to satisfy plaintiffs' burden … Vimeo is entitled to summary judgment on those videos as to the red flag knowledge issue, unless plaintiffs can point to evidence sufficient to carry their burden of proving that Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious

---

[3]     The numbers do not total 199 because issues of fact remained whether 10 employee-uploaded videos (some of which overlap with other categories) were stored at the direction of the user. *Supra* at 5 n.2.

to an ordinary person who had no specialized knowledge of music or the laws of copyright.

*Id.* at 97-98.

### 2.      Stage II: The Remand Summary Judgment Order And Plaintiffs' Appeal

On remand, Plaintiffs continued to contend that Vimeo had red-flag knowledge of 307 of the 1,675 videos now at issue, based on the same employee "interactions" the Second Circuit had found insufficient as a matter of law. *Vimeo IV*, 2021 WL 2181252, *2. After post-remand cross-motions for summary judgment, in May 2021 this Court granted Vimeo summary judgment as to all videos uploaded by third parties, finding that: (1) Plaintiffs failed to produce evidence that Vimeo employees "possessed the knowledge, experience, and background to distinguish infringement from authorized or fair use," *id.* *5; and (2) Vimeo employees' interactions with the videos at issue "say nothing about the employee's knowledge as to whether the use of such music was authorized or fair," *id.* *7-12.

The parties stipulated to Plaintiffs' dismissal with prejudice of the few employee-uploaded videos, *supra* 5 n.2, and the Court entered Final Judgment in Vimeo's favor, Dkt. 289. Plaintiffs appealed and, in January 2025, the Second Circuit affirmed this Court's grant of summary judgment to Vimeo on red-flag knowledge, as well as this Court's earlier ruling that Vimeo did not have the "right and ability to control" infringing activity. *Vimeo V*, 125 F.4th at 428. The Second Circuit denied Plaintiffs' petition for rehearing. 151 F.4th 13 (2d Cir. 2025).

### LEGAL STANDARD

The Copyright Act provides that a district court "in its discretion may allow the recovery of full costs by or against any party," and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. §505. "[C]ourts routinely award costs to the prevailing party in copyright cases." *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp.

2d 356, 365 (S.D.N.Y. 2003). Unlike the Patent and Lanham Acts, fee awards under the Copyright Act are not restricted to "exceptional cases." *Compare* 35 U.S.C. §285 *and* 15 U.S.C. §1117 *with* 17 U.S.C. §505.

Under the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike." *Fogerty*, 510 U.S. at 534. As the Supreme Court explained, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement. … Thus a successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527. Courts thus routinely award attorneys' fees to prevailing copyright defendants.[4] Indeed, some courts recognize that "[w]here a defendant is the prevailing party in a copyright case, the presumption in favor of awarding fees to the defendant is very strong." *Clay v. Cameron*, 2012 WL 13008431, *3 (S.D. Fla. Sept. 5, 2012).

The Supreme Court has made clear that the statutory language of §505 "clearly connotes discretion and eschews any precise rule or formula for awarding fees." *Kirtsaeng*, 579 U.S. at 202. The Supreme Court nonetheless has "established a pair of restrictions": (1) "a court must make a … particularized, case-by-case assessment"; and (2) "a court may not treat prevailing plaintiffs

---

[4]    *See, e.g.*, *Sandy v. Paramount Pictures Corp.*, 2025 WL 659214, *3 (C.D. Cal. Feb. 14, 2025); *Walsh v. Townsquare Media, Inc.*, 2022 WL 1302216, *4 (S.D.N.Y. May 2, 2022); *Hughes v. Benjamin*, 2020 WL 4500181, *4 (S.D.N.Y. Aug. 5, 2020); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 653-54 (9th Cir. 2020) (defendants' "complete success weighs in favor of an award of attorneys' fees); *Korman v. Iglesias*, 2018 WL 6978693, *5 (S.D. Fla. Dec. 6, 2018) ("an award of attorney's fees furthers the goals of the Copyright Act by encouraging defendants to pursue their meritorious defenses to copyright infringement claims"); *Sara Designs, Inc. v. A Classic Time Watch Co. Inc.*, 2018 WL 2976009, *3 (S.D.N.Y. June 13, 2018) ("The circumstances of this case warrant an award of attorneys' fees to deter future litigants from failing to attend diligently to their obligations, as well as to reimburse Defendants for their inflated litigation costs and advance the goals of the Copyright Act."); *Johnson v. Storix, Inc.*, 716 F. App'x 628, 632 (9th Cir. 2017) (affirming award of attorneys' fees to defendant, notwithstanding that claims "were neither unreasonable nor frivolous").

and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'" *Id.* (quoting *Fogerty*, 510 U.S. at 527, 533).

The Supreme Court identified "several nonexclusive factors to inform a court's fee-shifting decisions: frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 197. A court should afford "substantial weight" to the "objective reasonableness" of the plaintiff's positions. *Id.* at 207. A claim is "objectively unreasonable" if it is "clearly without merit or otherwise patently devoid of legal or factual basis." *Pyatt v. Raymond*, 2012 WL 1668248, *3 (S.D.N.Y. May 10, 2012).

However, objective reasonableness is by no means "controlling." *Kirtsaeng*, 579 U.S. at 208-09. Rather, "in an appropriate case, the presence of other factors may justify an award of fees despite a finding that the nonprevailing party's position was objectively reasonable." *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 122 (2d Cir. 2001). As *Kirtsaeng* recognized:

> §505 confers broad discretion on district courts and … they must take into account a range of considerations beyond the reasonableness of litigating positions. That means in any given case a court may award fees ***even though the losing party offered reasonable arguments*** …. Although objective reasonableness carries significant weight, ***courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals.***

579 U.S. at 208-09 (citations omitted). Ultimately, "equitable discretion should be exercised." *Fogerty*, 510 U.S. at 534.

For example, the "presence of improper motivation in bringing a lawsuit … weighs heavily in favor of an award of costs and fees." *Hughes*, 2020 WL 4500181, *4. Improper motivation may include "gambl[ing] on an unreasonable legal theory in order to achieve a secondary gain." *Walsh*, 2022 WL 1302216, *3.

Considerations of compensation and deterrence also inform fee awards. These exist "for the dual purposes of incentivizing parties with strong claims to litigate them and deterring parties with weak claims from embarking on wasteful litigation." *Id.* \*4; *see Berg v. M&F W. Prods., Inc.*, 2021 WL 2646223, \*4 (E.D. Tex. June 28, 2021) ("Awarding fees to [defendant] will ensure that future litigants in the company's position seek to defend their rights."). "[A]n award of attorney's fees [to a defendant] furthers the goals of the Copyright Act and *Fogerty* by encouraging defendants to pursue their meritorious defenses to copyright infringement claims." *Clay*, 2012 WL 13008431, \*6.

## ARGUMENT

### I.  THE COURT SHOULD AWARD VIMEO, AS THE PREVAILING, ITS REASONABLE ATTORNEYS' FEES BASED ON THE TOTALITY OF CIRCUMSTANCES OF THE CASE

#### A.  Vimeo Is The Prevailing Party

Vimeo undeniably is the prevailing party. *First*, this Court ruled for Vimeo on 77% of Plaintiffs' asserted videos on Vimeo's initial motion for summary judgment. *See supra* 5-6. *Second*, Vimeo then fully prevailed before the Second Circuit, which held that: (1) videos incorporating pre-1972 sound recordings *are* eligible for DMCA safe harbor; and (2) a Vimeo employee's mere awareness that a user-posted video that played all, or nearly all, of a recognizable song is insufficient to raise a triable issue of red-flag knowledge. *Third*, on remand, Vimeo prevailed on its motion to dismiss and motion for summary judgment on all third-party videos, and Plaintiffs voluntarily dismissed with prejudice their few remaining claims (on employee-uploaded videos). *Fourth*, Vimeo fully prevailed *again* before the Second Circuit on Plaintiffs' attempt to relitigate red-flag knowledge, as well as Plaintiffs' belated appeal of Vimeo's "right and ability to control" infringing activity. These resounding successes strongly favor an award of Vimeo's fees.

## B.     Plaintiffs' Claims Were Improperly Motivated

Plaintiffs harbored an improper strategic motive in filing their Complaint, which "weighs heavily in favor of an award of attorneys' fees and costs." *Hughes*, 2020 WL 4500181, *4.

***First***, Plaintiffs' conduct throughout this case makes clear they brought this case for one primary reason: to manufacture favorable judicial precedent that would allow them to forego the burden of affirmatively detecting instances of infringement and sending DMCA notices, in a brazen attempt to shift the burden to Vimeo (and other platforms) to proactively remove all videos containing music on sight or face a jury trial. While Plaintiffs could have sent Vimeo DMCA notices for the disputed videos—as they had done before—they instead chose to sue ***without*** sending a notice. This speaks volumes.

As the Second Circuit explained, the DMCA's notice-and-takedown regime reflects Congress's effort "to establish a compromise, which, on the one hand, augments the protections available to copyright owners, and, on the other, insulates service providers from liability for infringements of which they are unaware, contained in material posted to their sites by users, so as to make it commercially feasible for them to provide valuable Internet services to the public." *Vimeo III*, 826 F.3d at 82. Congress intended for the DMCA to release service providers from an obligation to "monitor its service or affirmatively seek facts indicating infringing activity … in order to claim [the DMCA's] limitation on liability," provided that it acted upon receipt of a takedown notice. S. Rep. No. 105-190, at 44; H.R. Rep. No. 105-551, pt. 2, at 53; *see also* 17 U.S.C. §512(m) (no obligation to proactively monitor). In short, "the purpose of §512(c) was to give service providers immunity, in exchange for ***augmenting*** the arsenal of copyright owners by creating the notice-and-takedown mechanism." *Vimeo III*, 826 F.3d at 97. The DMCA places the burden of identifying infringement on ***rightsholders***, not platforms. *Id.* at 83. This regime is what Plaintiffs sought to undo in this case: in Plaintiffs' own words, they sought an interpretation of the

DMCA that would **not** "require[] copyright owners to constantly search the Internet, find infringing works on the service providers' (like Vimeo's) servers and indexes, serve takedown notices, and wait for the service provider to remove the infringing work at the specific URL located by the copyright owner." Dkt. 69 at 2.

But this is ***precisely*** the bargain the DMCA struck. *See Vimeo III*, 826 F.3d at 98 (rejecting Plaintiffs' construction: "If service providers were compelled constantly to take stock of all information their employees may have acquired that might suggest the presence of infringements in user postings, and to undertake monitoring investigations whenever some level of suspicion was surpassed, these obligations would largely undo the value of §512(m)"). The Second Circuit acknowledged Plaintiffs' "protest that copyright owners are shortchanged by the compromise," but reminded that this "is a question for Congress. We have no choice but to apply the statute as Congress wrote it." *Id.* at 83 n.4. Plaintiffs' dissatisfaction with the DMCA's text cannot justify filing a lawsuit with the intent to subvert it.

Plaintiffs' refusal to send Vimeo DMCA notices reveals they "never endeavored to efficiently and fairly resolve the litigation." *Hughes*, 2020 WL 4500181, *4. DMCA notices would have secured the expeditious removal of the complained-of videos without a lawsuit, rather than forcing Vimeo through a 16-year litigation, even following Vimeo's voluntary takedown of those videos. *Cf. Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) (improper motivation where defendant "ceased all use of the [allegedly infringing material]"). Indeed, a "copyright holder's failure to notify the service provider of infringement through the notice and takedown procedure, as [Plaintiffs] failed to do here, ***strips it of the most powerful evidence of actual knowledge***." *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017). Vimeo should shoulder the cost of Plaintiffs' refusal to avail themselves of this mechanism.

**Second**, Plaintiffs cannot credibly claim it was too burdensome to submit DMCA notices. Not only had they previously done so, but with their Complaint they attached a table providing details about each video by URL. *E.g.*, Dkt. 1 (Sched. A). Plaintiffs already undertook the legwork needed to send Vimeo a DMCA notice. They simply chose not to because protecting removing those specific videos was never the goal—rather, they used this lawsuit with the hope of a creating a precedent that would reduce (if not eliminate) the need to send DMCA notices at all.

**Third**, Plaintiffs' demand for damages that included "maximum statutory damages of $150,000 for each copyright infringed," Dkt. 1 ¶34, confirms Plaintiffs' motive. They not only sought to conscript the Court into overturning the DMCA, but also sought more than ***$250 million*** (*e.g.*, 1,675 videos x $150,000 = $251,250,000.00). Plaintiffs thus sought a "legally unjustied windfall" that would also serve to scare other platforms into self-monitoring, when they could have sent a DMCA notice that would have afforded instant relief. *Baker*, 431 F. Supp. 2d at 358.

\* \* \*

Plaintiffs' decision to "knowingly gamble[] on an unreasonable legal theory in order to achieve a secondary gain … is indeed improperly motivated." *Torah Soft Ltd. v. Drosnin*, 2001 WL 1506013, \*5 (S.D.N.Y. Nov. 27, 2001). This "weighs heavily in favor of an award of costs and fees." *Hughes*, 2020 WL 4500181, \*4. Plaintiffs dragged Vimeo along involuntarily, forcing it to spend millions of dollars in fees that could have been avoided with a DMCA notice. *See* Declaration of Todd Anten ("Anten Decl,") ¶¶17-19. The Court should exercise its discretion to find that Plaintiffs' motivation alone is sufficient to award Vimeo its fees. *See Kirtsaeng*, 579 U.S. at 209 ("overaggressive assertions of copyright claims" may warrant award of fees "in light of the Copyright Act's essential goals"). Because "a successful defense of a copyright infringement action may further the policies of the Copyright Act," *Fogerty*, 510 U.S. at 527, and because Vimeo's defense furthered the DMCA's policies and goals, such an award is warranted here.

## C.  Plaintiffs' Claims And Conduct Were Objectively Unreasonable

Though the Court need not reach it, Plaintiffs' conduct during this 16-year litigation has been "objectively unreasonable," further warranting an award of Vimeo's fees. *Kirtsaeng*, 579 U.S. at 208.[5] The mere fact that this case has lasted 16 years alone places this case in its own stunning category. And during this period, Plaintiffs repeatedly engaged in unreasonable litigation tactics that unnecessarily burdened Vimeo and the Court.

To assist the Court, Vimeo separates Plaintiffs' conduct in two brackets:

- **Stage I** concerns all "pre-remand" proceedings from the filing of the case through April 11, 2017 (*e.g.*, pleadings, DMCA discovery, cross-motions for summary judgment, this Court's orders on summary judgment and reconsideration, Vimeo's interlocutory petition and appeal to the Second Circuit, and the Supreme Court's denial of Plaintiffs' petition for a writ of certiorari). *See* Dkt. 160 (lifting stay on April 11).

- **Stage II** concerns post-remand proceedings from April 11, 2017 to the present (*e.g.* motion to dismiss unfair competition claims, cross-motions for post-remand summary judgment, the Court's order on summary judgment, the entry of Final Judgment, and Plaintiffs' appeal to the Second Circuit).

### 1.  Plaintiffs' Conduct Through Stage I Was Objectively Unreasonable

The facial unreasonableness of Plaintiffs' initial Complaint and subsequent litigation through Stage I of this litigation weighs substantially in favor of an award of attorneys' fees. *See Kirtsaeng*, 579 U.S. at 210.

***First***, for the vast majority of asserted videos, Plaintiffs had ***zero evidence*** Vimeo was even aware such videos existed, and thus had no evidence that Vimeo had knowledge (red flag or otherwise) to support a claim of infringement. For the 199 videos in Plaintiffs' initial Complaint, this Court found "there is no evidence that Vimeo acquired actual or red flag knowledge as to the 144 videos with which Vimeo employees indisputably did not interact, and Vimeo is thus entitled

---

[5]  An award of attorneys' fees does not require "a showing of bad faith or frivolousness." *Pyatt*, 2012 WL 1668248, *4. Even if the Court believes Plaintiffs had a good-faith belief in the merits of their claims, the Court may still (and should) find that Plaintiffs engaged in objectively unreasonable conduct.

to summary judgment as to these videos." *Vimeo I*, 972 F. Supp. 2d at 523. The Court later added nine more videos to that list, resulting in a total of *153* of the 199 asserted videos (77%). For these videos, the inquiry was not close—Vimeo had no knowledge, and thus safe harbor applied as a matter of law. (This is one consequence of failing to send a DMCA notice.)

Plaintiffs tried to avoid this outcome by claiming Vimeo was "willfully blind" to those instances because Vimeo "did not spend any money or dedicate any employees to 'ferret out' music infringement" and "it did not instruct its employees to focus on music infringement." Dkt. 69 at 17. This position was objectively unreasonable—as this Court responded, "§512(m) and attendant case law make clear that service providers are under no affirmative duty to seek out infringement." *Vimeo I*, 972 F. Supp. 2d at 525. The Second Circuit agreed. *See Vimeo III*, 826 F.3d at 98-99. Plaintiffs' decision to bring these claims, and to persist through summary judgment despite the absence of *any* basis for liability for the majority of asserted videos, is the kind of claim "patently devoid of legal or factual basis" which courts find to be "objectively unreasonable." *Pyatt*, 2012 WL 1668248, *3.

***Second***, Plaintiffs over-litigated its claims on summary judgment, requiring Vimeo to expend an inordinate amount of hours responding to Plaintiffs' burdensome submissions. For example, Plaintiffs' Statement of Undisputed Facts consisted of *85 pages* and *403 paragraphs*, to which Vimeo was required to respond. *See* Dkt. 72 (Plaintiffs' statement). Vimeo's counsel thus was forced to sift through, investigate, and respond to 403 paragraphs, even though most of the supposedly "undisputed" facts were immaterial to Plaintiffs' motion. *See* Dkt. 78 (Vimeo's 123-page response). If this were not enough, Plaintiffs then submitted, without invitation, a ***reply*** to Vimeo's 56.1 response—a filing not anticipated by Local Rule 56.1—attaching two exhibits, each of which contained *another* chart of statements. Dkts. 104, 104-1 & -2. One of these exhibits was

***82 pages long***, contesting each of Vimeo's responses that asserted a factual dispute. *See* Dkt. 104-2. Vimeo should not be forced to pay for Plaintiffs' objectively unreasonable and overly vexatious litigation conduct. *See, e.g. Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 125-26 (S.D.N.Y. 2008) (conduct objectively unreasonable where plaintiff "needlessly increased the costs of defending the action").

### 2. Plaintiffs' Conduct In Stage II Was Objectively Unreasonable

Plaintiffs' conduct during Stage II was even more objectively unreasonable. The Second Circuit's 2016 decision was clear: "***Vimeo is entitled to summary judgment*** on those videos as to the red flag knowledge issue, unless plaintiffs can point to evidence sufficient to carry their burden of proving that Vimeo personnel either knew the video was infringing or knew facts making that conclusion obvious to an ordinary person who had no specialized knowledge of music or the laws of copyright." *Vimeo III*, 826 F.3d at 98. The Second Circuit explained:

> Even assuming awareness that a user posting contains copyrighted music, the service provider's employee cannot be expected to know how to distinguish, for example, between infringements and parodies that may qualify as fair use. Nor can every employee of a service provider be automatically expected to know how likely or unlikely it may be that the user who posted the material had authorization to use the copyrighted music. Even an employee who was a copyright expert cannot be expected to know when use of a copyrighted song has been licensed.

*Id.* at 97. Thus, it found that each asserted form of "interaction"—*e.g.*, when an employee 'liked' or commented on a video, placed it in a "channel," or "buried" it, *id.* at 96 & n.12—was not sufficient as a matter of law to raise a triable issue of red-flag knowledge.

On remand, Plaintiffs knew they had no evidence that any Vimeo employee knew each video at issue was infringing, or facts making that conclusion obvious to an ordinary person. But rather than admit they had no evidence, Plaintiffs instead filed a supplemental motion glutting the record with ***thousands*** of convoluted cross-referenced facts as to 307 videos, all of which ***at most***

merely showed a Vimeo employee was aware of the presence of copyrighted music, not that infringement was objectively obvious.

Vimeo did everything it could to ward off Plaintiffs' over-litigation. Vimeo raised its concern at the Court's May 11, 2017 conference, resulting in the Court asking Plaintiffs to find a "way to limit this to make this proceed a little more efficiently" and keep their statement of undisputed facts "as limited as possible." Dkt. 169 (5/11/17 Tr.) at 7:16-24. Plaintiffs assured they did not "envision that it will be very large." *Id.* at 7:18-22. This turned out to be wrong—they submitted: (1) a 57-page statement containing more than 270 paragraphs (including sub-parts, such as a 13-page chart with 70 subparts), Dkt. 187; and (2) a massive "summary chart" consisting of an Excel table with 318 rows (one for each asserted work) and 35 columns—over 11,000 data cells that supposedly reflected *every* interaction any Vimeo employee ever had with each of the 307 videos. Dkt. 189-1 at 25-132 (Ex. C). Vimeo was forced to spend hours reviewing these submissions, resulting in an 86-page response (Dkt. 199) and a response chart to address every row in Plaintiffs' table (Dkt. 200-1). Once again, Plaintiffs filed an unrequested "reply" to Vimeo's response, including a 58-page single-spaced chart of arguments as to why "there is no genuine dispute." Dkt 203-2. (This required Vimeo, with the Court's permission, to correct this "potential unfairness" with its own filing identifying Plaintiffs' inaccuracies. Dkts. 210-211.)

But what was most egregious is that *none* of Plaintiffs' mass of paper on remand contained what the Second Circuit demanded: Evidence of employee knowledge, on a video-by-video basis, of facts making infringement objectively obvious to an ordinary person. Rather, it was all the same type of information the Second Circuit *already* deemed inadequate: awareness of music, not of obvious infringement. The Court recognized this deficiency, informing Plaintiffs in 2018 that their chart "does not incorporate … the evidence, as to each video, of the 'facts actually known' by the

employee(s) who interacted with the video that would 'make infringement obvious'" (Dkt. 213 (quoting *Vimeo III*, 826 F.3d at 97)), and directing Plaintiffs to submit: (1) a new chart with "an additional column listing the pertinent facts," and (2) a "supplemental memorandum" explaining those facts (*id.*). In response, Plaintiffs submitted an impossible-to-follow chart that cross-referenced 166 additional "facts," that **still** failed to show infringement would have been "objectively obvious" to an ordinary person. Dkts. 218, 218-1 & -2. This again required a response.

This Court's Order, issued almost three years later, was not even close—it repeatedly found Plaintiffs failed to adduce any evidence responsive to the Second Circuit's mandate. For example, Plaintiffs "failed to produce evidence to suggest that the Vimeo employees who viewed the Videos-in-Suit possessed 'expertise with respect to ... the laws of copyright,' or with respect to the licensing practices of the artists whose music appears in the videos," *Vimeo IV*, 2021 WL 2181252, *5 (quoting *Vimeo III*, 826 F.3d at 97), and "have not demonstrated that any employee who viewed a Video-in-Suit possessed facts sufficient to determine whether the copyrighted material incorporated therein was either authorized or qualified as fair use." *Id.* The Court concluded: **Plaintiffs' "lack of evidence in that respect is dispositive**." *Id.* *12.

Plaintiffs' insistence on relitigating red-flag knowledge based on evidence the Second Circuit already deemed insufficient was objectively unreasonable. And Plaintiffs' explosion of filings on that unsupportable position needlessly increased Vimeo's costs, forcing it to spend hundreds of thousands of dollars responding to over-long papers. *Contractual Obligation Prods.*, 546 F. Supp. 2d at 125-26 ("continued prosecution" of suit "despite the conclusions of [the Court] that it did not have standing to assert a claim under the Copyright Act" "needlessly increased the costs of defending the action" and therefore "was objectively unreasonable"); *MPAY Inc. v. Erie Custom Computer Apps., Inc.*, 2022 WL 17829712, *8 (D. Minn. Dec. 21, 2022) ("[plaintiff's]

insistence on maintaining its claims … despite clear guidance from this court and the court of appeals that those claims were without legal basis was unreasonable").

If that was not enough, Plaintiffs then appealed to the Second Circuit, causing Vimeo to incur more fees, all for the Second Circuit to affirm based on the same "weakness of Plaintiffs' argument that Vimeo had red flag knowledge of infringement based on mere observation of the videos by employees with no training in copyright law." *Vimeo V*, 125 F.4th at 422.[6]

Plaintiffs' decision to pursue untenable arguments on remand, and again on appeal, was objectively unreasonable. *Luken v. Int'l Yacht Council, Ltd.*, 581 F. Supp. 2d 1226, 1244 (S.D. Fla. 2008) (fees warranted where party made unreasonable legal argument in district court and "compounded their objectively unreasonable behavior by continuing to press these points on appeal"). Plaintiffs' conduct "needlessly increased the costs of defending the action" by pushing already-rejected issues. *Contractual Obligation Prods.*, 546 F. Supp. 2d at 125-26. Given Plaintiffs' unreasonable and vexatious conduct, the Court should at minimum award Vimeo its fees incurred in Stage II, which consisted of ***nine extra years*** of litigation: $1,202,768.98.

### D. A Fee Award Is Necessary To Compensate Vimeo And Deter Plaintiffs

Finally, a fee award is warranted based on considerations of compensation and deterrence. *Walsh*, 2022 WL 1302216, *4.

***First***, where a defendant prevails, courts show greater inclination to award fees because, while a prevailing plaintiff can be awarded damages, a prevailing defendant receives no such reward. Such is the case here: Vimeo litigated this lawsuit for more than a decade and a half

---

[6]    In 2021, Plaintiffs also appealed this Court's September 2013 decision on "right and ability to control" alongside red-flag knowledge. Plaintiffs could have raised that issue as part of the interlocutory appeal. That is, the second appeal itself was entirely unnecessary.

without the prospect of collecting damages. As the First Circuit explained in affirming a copyright defendant's fee award:

> The District Court concluded that the fees award was supported by the protracted nature of the case, lasting more than two years, and because Xcentric, as the defendant, litigated without the prospect of an award of damages and that the award it sought regarding fees and costs would vindicate its defense on the merits. The District Court further concluded that the degree of success Xcentric obtained also supported an award, as Xcentric prevailed on all of plaintiffs' claims, and Xcentric's sole counterclaim was dismissed not on the merits, but on its own motion.

*Small Just. LLC v. Xcentric Ventures LLC*, 873 F.3d 313, 329 (1st Cir. 2017) (cleaned up); *see also, e.g.*, *Harner v. Wong Corp.*, 2015 WL 11111300, *1 (D.N.M. June 4, 2015) ("To advance considerations of compensation and deterrence, a prevailing defendant is entitled to a 'very strong' presumption in favor of receiving attorneys' fees."); *Figure Eight Holdings, LLC v. Dr. Jay's, Inc.*, 2011 WL 5839655, *1 (C.D. Cal. Nov. 18, 2011) ("compensation and deterrence weigh in favor of granting defendants' attorney's fees" because "prevailing defendants are left having expended funds, even in defense of unmeritorious claims"). If "more than two years" was sufficiently "protracted" to warrant an award of fees in *Small Justice*, sixteen years certainly warrants it. Further, as in *Small Justice*: (1) Vimeo litigated without the prospect of damages; (2) Vimeo prevailed on all of Plaintiffs' claims; and (3) a fees award "would vindicate [Vimeo's] defense on the merits." *Id.*

While Vimeo can never recover the time it lost and inconvenience it endured, awarding Vimeo its fees will bring Vimeo closer to the condition it was in before being subjected to Plaintiffs' lawsuit. As the prevailing party, Vimeo should not be stuck with a loss of millions of dollars for defending a meritless lawsuit. Moreover, Vimeo's defense encourages other service providers to defend themselves against lawsuits brought in contravention of the DMCA. *See Fogerty*, 510 U.S. at 518 ("equitable discretion should be exercised" in awarding fees).

Awarding Vimeo its fees also would serve the interests of equity in light of Vimeo's far smaller size compared to Plaintiffs, among the world's largest record companies. *See Shangold v. Walt Disney Co.*, 275 Fed. Appx. 72, 74 (2d Cir. 2008) ("fee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account").

**Second**, awarding attorneys' fees would serve the "purposes of deterrence, in that it helps to prevent the filing of similarly meritless copyright actions by would be plaintiffs" who might be similarly tempted to file suit and avoid the DMCA notice requirements. *Bernal v. Paradigm Talent & Literary Agency*, 2010 WL 6397561, *3 (C.D. Cal. June 1, 2010). As discussed above, Plaintiffs had an obvious incentive to try to secure a reading of the DMCA that would undermine the DMCA's goals and shift the burden to platforms like Vimeo. Absent deterrence in the form of a fee award, other rightsholders will be incentivized to try to do the same. Plaintiffs are frequent filers of copyright lawsuits and need to be deterred from continued overreach; moreover, like-minded plaintiffs must be deterred "from bringing unreasonable claims based on a cost/benefit analysis suggesting that they can score big if they win and that there will be no adverse consequences if they lose." *Walsh*, 2022 WL 1302216, *4.

If Plaintiffs are permitted to walk away without compensating Vimeo a single dollar after intentionally skirting its available DMCA remedies, Plaintiffs and others will have no reason to comply with the DMCA's notice-and-takedown procedure. A potential plaintiff would have little reason to send a DMCA takedown notice when it could instead file a complaint and gamble on a chance to earn a massive payout or coerce a settlement from a company less able to defend itself than Vimeo. To protect Congress's DMCA "compromise," an award of attorneys' fees here is essential to deter Plaintiffs and others from shirking the DMCA.

### E. The Court Should Award Vimeo Its Fees For Preparing This Motion

Finally, time spent drafting and litigating a motion for attorney's fees is itself compensable. *See Hughes*, 2020 WL 4500181, *6; *Pig Newton, Inc. v. Bds. of Dirs. of The Motion Picture Indus. Pension Plan*, 2016 WL 796840, *9 (S.D.N.Y. Feb. 24, 2016). Vimeo thus requests its reasonable fees incurred in preparing this motion. If granted, Vimeo will supplement this motion with documentation reflecting the fees incurred in preparing this motion, including its reply.

## II. VIMEO'S REQUESTED ATTORNEYS' FEES, AND QUINN EMANUEL'S HOURS EXPENDED ON THIS CASE, ARE REASONABLE AND APPROPRIATE

Vimeo's requested fee award (excluding fees for preparing this motion) is below:

| STAGE[7] | FEES |
|---|---|
| Stage I – pre-remand | $4,771,751.89 |
| Stage II – post-remand | $1,202,768.98 |
| **TOTAL** | **$5,974,520.87** |

Notably, Vimeo is ***not*** seeking the entirety of its costs and attorneys' fees incurred in its defense. For example, in a good-faith effort to simplify the Court's assessment and minimize disputes, Vimeo voluntarily excludes fees for all attorneys and staff who billed fewer than 20 hours to this case, resulting in the removal of ***40*** out of 62 timekeepers (nearly two-thirds), foregoing over $80,000.00 in fees. Anten Decl. ¶16. Thus, to the extent there is any concern over isolated entries, Vimeo's reduced request sufficiently accounts for any such dispute.

### A. Vimeo's Requested Attorneys' Fees Are Reasonable And Appropriate

Determining what constitutes a reasonable award rests within the discretion of the Court. *See Matthew Bender & Co.*, 240 F.3d at 121 ("The standard of review of an award of attorney's fees is highly deferential to the district court."). The reasonable fee analysis "boils down to [asking]

---

7  Allocation of fees to each stage is approximate.

what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Hughes*, 2020 WL 4500181, *5 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The lodestar determination may be based on the Court's "own familiarity with the case and its experience generally as well as … the evidentiary submissions and arguments of the parties." *Hughes*, 2020 WL 4500181, *5. The burden of "documenting the appropriate hours expended and hourly rates" rests with the fee applicant. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

1. **Quinn Emanuel's Hourly Rates:** Courts assess the reasonableness of hourly rates "by considering the prevailing market rate for lawyers in the district in which the ruling court sits." *Webber v. Dash*, 2022 WL 2751874, *9 (S.D.N.Y. July 14, 2022). "The rates used by the court should be current rather than historic hourly rates." *Reiter v. Metro. Transp. Auth. of N.Y.*, 457 F.3d 224, 232 (2d Cir. 2006). The rate actually charged "is obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008).

Quinn Emanuel's hourly rates for attorneys and staff who billed to this case, as reflected in the accompanying Anten Declaration, are reasonable and consistent with (if not lower than) the prevailing market rates currently charged in this District by legal professionals of equal experience and competence. *See* Anten Decl. ¶¶6-16, 20-80. Hourly rates charged by Quinn Emanuel have been found to be reasonable, especially in complex intellectual property cases such as this. *See, e.g.*, *Proofpoint, Inc. v. Vade Secure, Inc.*, 2020 WL 7398791, *3 (N.D. Cal. Dec. 17, 2020) (Quinn

Emanuel's rates reasonable: "they are experienced and seasoned practitioners; that they are employed at a large international firm with a highly regarded reputation; that they have highly specialized technical backgrounds as one might expect from attorneys practicing in this particular domain of intellectual property law"); *Rudi v. Wexner*, 2022 WL 1682297, *5 (S.D. Ohio May 16, 2022) ("The Court finds that [Quinn Emanuel's] hourly rates are reasonable under the circumstances of this particular [contingency] case."); *Blattman v. Siebel*, No. 15-cv-530 (CFC), ECF No. 434 (D. Del. Dec. 6, 2021) (Quinn Emanuel's attorney's fees reasonable, declining to reduce fee award); *Clark v. Castor and Pollux Ltd. Liability Co.*, 2019 WL 4467117, *19 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 18, 2019) ("[Quinn Emanuel's] experience, ability and reputation further supports the requested fees. … Quinn Emanuel's rates are reasonable for a firm of its stature and comparable to those charged by other leading firms."). Moreover, Quinn Emanuel discounted all hourly rates by 10%; Vimeo seeks that discounted rate, not the full rate. Anten Decl. ¶¶2, 14, 80.

**2. Quinn Emanuel's Hours Billed:** With respect to hours, "any attorney ... who applies for court-ordered compensation in this Circuit ... must document the application with contemporaneous time records ... specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *Brunswick Recs. Corp. v. Lastrada Ent. Co.*, 2023 WL 8703705, *6 (S.D.N.Y. Dec. 15, 2023). These records, in the form of Quinn Emanuel's monthly invoices, are attached as exhibits to the Anten Declaration (Exs. A-O). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). Courts, however, should not "engage in an *ex post facto* determination of whether attorney hours were necessary to the relief obtained." *Id.*

24

To secure dismissal of all of Plaintiffs' claims—which covered 1,675 asserted videos—Quinn Emanuel prepared necessary pleadings, motions and other papers, engaged in necessary discovery tasks (including massive document collection and review, defending 10 depositions, and expert discovery), two rounds of protracted summary judgment, and two separate appeals. The hours counsel spent performing such work are well-documented and supported by invoices and contemporaneously created time-charge records. The invoices detail the time-keeper, a description of the services, and the amount of time expended in tenth-of-an-hour increments, together with the dollar value of each timeslip; Anten Decl. ¶4; *see Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009); *Barclays Capital Inc. v. Theflyonthewall.com*, 2010 WL 2640095, *2 (S.D.N.Y. June 30, 2010).

The hours Quinn Emanuel expended defending Vimeo in this action were both reasonable and necessary, particularly in light of the scope of this litigation. Vimeo's counsel adopted multiple measures to efficiently and effectively secure dismissal of Plaintiffs' claims. For example:

- Vimeo pursued a "phased" discovery schedule that limited discovery to DMCA-related matters, to avoid unnecessary fees and expenses on non-DMCA issues;

- Vimeo took only two fact witness depositions—a 30(b)(6) deposition of a representative of each set of Plaintiffs—while Plaintiffs took ten.

- Quinn Emanuel endeavored to assign hourly contract attorneys to conduct first-level document review, to avoid the higher cost of associates conducting such first-level review.

*See* Anten Decl. ¶¶14-15. Considering the number of years, the scope of discovery, and the number of dispositive motions and appeals that counsel handled, Vimeo's bills are eminently fair.[8]

---

[8]  The award may include fees incurred in the District Court and the Second Circuit. *See TCA Television Corp. v. McCollum*, 2017 WL 2418751, at *15-16 (S.D.N.Y. June 5, 2017) (awarding appellate fees).

Finally, much of Vimeo's attorneys' fees resulted from Plaintiffs' over-litigation, as described above. In light of Plaintiffs' tactics, Vimeo cannot be faulted for the hours it was required to expend defending itself.

*      *      *

Based upon the information in the Anten Declaration and attached documentation, the Court should award Vimeo its requested attorney's fees in the amount of $5,974,520.87, subject to supplementation of fees for preparing this motion. *Supra* Part I.E.

### B.     The Court Should Award Vimeo The Full Lodestar Amount

Once this Court calculates a lodestar amount, it has the discretion to adjust that amount when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee"; however, "such adjustments are appropriate only in 'rare circumstances,' because the 'lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee.'" *Millea*, 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)). Indeed, when a prevailing party "obtain[s] excellent results, his attorney should recover a fully compensatory fee" that will "[n]ormally … encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

The conservative lodestar amounts reflected in the Anten Declaration should be awarded in full. Vimeo achieved complete success, furthering the objectives underlying the DMCA. The fees incurred were reasonable and necessary to the needs and circumstances of the case.

Because Vimeo obtained an "excellent result" and because there is no basis for reducing adjusting Vimeo's lodestar figure below what is requested, Vimeo respectfully submits that the Court should award it $5,974,520.87, subject to any supplementation, *see supra* Part I.E.

### III. THE COURT SHOULD AWARD VIMEO ITS COSTS THAT THE SECOND CIRCUIT REFERRED TO THE DISTRICT COURT

After the Second Circuit issued its 2016 decision, Vimeo submitted an itemized bill of costs for $16,461.70. No. 14-1048(L), ECF 281 (2d Cir. June 30, 2016). Plaintiffs submitted an opposition (*id.*, ECF 283 (July 11, 2016)), and Vimeo submitted a reply (*id.*, ECF 289 (July 15, 2016)). On March 31, 2021, the Second Circuit issued an Order that "[t]he issue of costs is REFERRED to the district court to be decided with the other costs of the overall proceeding." *Id.* ECF 328 (Mar. 31, 2021). Vimeo therefore requests that this Court award Vimeo taxable costs of $16.461.70 for that appeal, for the reasons set forth in that briefing. *See* Anten Decl. ¶81.

### CONCLUSION

Vimeo respectfully requests that the Court grant this motion in its entirety.

Dated:     November 21, 2025
           New York, New York

Respectfully submitted,

*/s/ Todd Anten*

Todd Anten
toddanten@quinnemanuel.com
Owen F. Roberts
owenroberts@quinnemauel.com
Elizabeth Bishop
elizabethbishop@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

*Attorneys for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Vimeo certifies that this memorandum of law: (1) was prepared with a computer and; (2) complies with the word-count limitations because, excluding the parts of the document exempted by Local Civil Rule 7.1(c), this document contains 8,749 words as calculated by the word-count function of Microsoft Office 2007.

Dated:     November 21, 2025
           New York, New York

*/s/ Todd Anten*
Todd Anten

*Attorney for Defendants*